Alder *et al*, *vs*. Beall *et al*.—1840.

JAMES C. ALDER *et al*, *vs*. ALLISON F. BEALL *et al*.—*June Term* 1840.

P. J. F., who died in the year 1839, by his will, executed in 1836, after several charitable bequests, divided the residuum of his estate as follows:

"The residue of my estate, real and personal, to be equally divided between the children of my sister, Ann Latimer, and their heirs forever, and the children of my sister Penelope Beall, and their heirs forever."

P. B., one of the sisters, survived the testator, A. L. being dead; the latter had seven children, the former four.

The orphan's court of *Charles* county, directed that the personal estate of the testator should be divided among the legatees, *per stirpes*, giving half to the children of each sister, and this court, upon appeal, affirmed the decree.

APPEAL from the Orphan's Court of *Charles* County.

On the 19th March 1840, *James H. Alder* and *Penelope* his wife; *James A. Chaplin* and *Elizabeth* his wife; *Joseph Sherton* and wife; *Charles Sherton* and wife; *Randolph B. Latimer*, and *Thomas H. Latimer*, filed their petition before said court, alleging, that the female petitioners, and *R. B.* and *T. H. Latimer* and *Dr. Latimer*, are the children of *Ann Latimer*, and nieces and nephews of *Philip J. Ford*, deceased; that their said

uncle made his will on the 6th March 1836; the 1st April 1839 married, and on the 15th May following died, without heirs of his body, or revoking said will, or the same being revoked by the subsequent birth of a child; that the legatees under his said will, have awarded to the widow a right to receive one-third of his personal estate, and she has con-sented to take the same; that by his said will the said deceased *Philip J. Ford*, devised the residue of his estate, real and personal, to be equally divided between the children of his sister *Ann Latimer*, and their heirs forever, and the children of his sister *Beall* and their heirs forever; and they show, that his sister Beall had four children, making with your petitioners, the children of his sister *Ann Latimer*, eleven legatees; that the children of *Penelope Beall*, claim one-half of two-thirds of said estate, construing the said bequest as giving to the children of each sister one moiety of his estate; that commissioners appointed by this court, have so divided said estate, after an allowance of one-third thereof to the widow of said *Philip*.  Prayer that the return of said commissioners be rejected, and that after the widow's allowance first made, the petitioners may each be allowed one-eleventh part of said personal estate, for summons, &c.

The will of *Philip J. Ford*, declared, after several charitable devises, as follows:

"The residue of my estate, real and personal, to be equally "divided between the children of my sister *Ann Latimer*, and "their heirs forever, and the children of my sister *Penelope Beall*, "and their heirs forever, with this express understanding, that "that portion of my estate, real and personal, which will fall "to my niece *Mary P. Smallwood*, to be entrusted to my ex-"ecutors, hereinafter named, or if my executors should die "before my niece *Mary P. Smallwood*, then her portion of my "estate, real and personal, to be entrusted to the execution of "*Allison F. Beall*, my nephew, for the exclusive benefit of "my niece *Mary P. Smallwood*, and her children forever.  My "object is to secure to my niece *Mary P. Smallwood*, her por-"tion of my estate, real and personal, during her life, and at

"her death to descend to her children, uninjured and unim-
"paired, and to be equally divided between them. When the chil-
"dren of my niece, *Mary P. Smallwood*, shall at her death re-
"ceive their portions of my estate, real and personal, then, and
"not until then, shall the trust imposed on my executors, &c. to
"guard the property of my niece *Mary P. Smallwood*, devised
"by me to her, cease.

"It is also my will, that the children of *Doctor Latimer*
"shall have the same proportion of my estate, real and person-
"al, as he, the said *Doctor Latimer*, my nephew, would be en-
"titled to if living.

"And further, if any of my present heirs at law should die
"without lawful children, in that event, it is my will that the
"property devised by me to them, shall descend to my other
"heirs at law, and their children forever, to be divided between
"them in equal proportions."

The will appointed the testators, nephews *Allison F. Beall*
and *Randolph B. Latimer*, executors, &c.

The appellees, the children of *Penelope Beall*, answered the
petition, and claimed a division of the property into two parts,
equally between the children of the two sisters of the deceased.

At the trial of the matters alleged in this petition, the ap-
pellants offered to prove by a witness who wrote the last will
and testament of the deceased, at his instance and request,
that the testator requested him so to pen the clause in said
will, in which the residue of his estate, both real and person-
al, is written, in such a manner as to devise the said residue to
the eleven children of his sisters *Ann Latimer* and *Penelope
Beall*, in equal proportions, and at the time he the witness
wrote the said will, he supposed he had done so, and that such
was the import and meaning of the words used by him; that
he informed said *Ford*, that he had written the said will in the
manner desired by him, and that the said *Ford* so under-
stood the import of the said words used therein when he exe-
cuted the said will. The court rejected this evidence, and the
petitioners excepted.

The orphan's court, (BARNES, MATTHEWS and DIGGES,)

then ordered, that the commissioners' report made in the premises, dividing the *residue* of the said estate in two equal portions between the children of *Ann Latimer* and the children of *Penelope Beall*, legatees, &c., be ratified and confirmed.

From this order and decree the petitioners appealed to this court.

The appeal was argued before BUCHANAN, C. J., ARCHER, CHAMBERS, and SPENCE, J.

T. F. BOWIE and P. W. CRAIN for the appellants.

The judgment of the Orphan's Court, affirming the return of the commissioners is erroneous.

1. Because it is contrary to the intention of the testator, as displayed upon the face of the will.

2. Because the whole will, taken together, shews that the testator designed to mingle the children into one mass, and give them the residue of his estate, thereby designating that they were to take *per capita*, and not by families. 8 *Ves. Jr.* 607, 608. 1 *Merriv.* 414. *Ib.* 650. 3 *Bro. C. C.* 367. 5 *S. & Rawl.* 421. 1 *Wash. Va. Rep.* 14. 13 *Mass.* 396. 2 *Stark. Ev.* 557, 559, 561. *Ram. on Wills,* 32. 17 *Law Lib.* 32. 2 *Munf.* 234. 2 *P. Wms.* 342. 10 *Ves.* 174. 3 *Bro. C. C.* 68, 69. *Ib.* 367. *Maddox vs. the State,* 4 *Harr. & John.* 539.

3. Because the words "to the children of his sisters," *Latimer* and *Beall,* were mere *descriptio personarum,* or specific designations of certain individuals, and a new inheritance is grafted upon the children, to whom he directly and immediately gives the estate.

4. Because the context of the will plainly indicates the intention of the testator in the residuary clause, and shews that he intended to divide his estate equally among all his nieces and nephews, without reference to the families.

5. Because they improperly rejected the parol evidence of *Lemuel Wilmer,* offered to explain the meaning of the testator.

J. M. S. CAUSIN for the appellants, cited in support of the construction of the Orphan's Court—*Baddely vs. Lepping-*

*well*, 3 *Burr.* 1533. 5 *Mad.* 412. 19 *Ves.* 654. *Wardon Leg.* 123. 22 *Law Lib.* 175. 1 *Roper*, 116. 1 *Mer.* 414. 2 *P. Wms.* 383.

At this term the court affirmed the judgment.

On the last day of this term the appellants applied to the court for permission to re-argue the cause, which was granted; and J. JOHNSON, T. F. BOWIE and P. W. CRAIN, filed the following argument—

*Philip J. Ford*, by his will, dated the 6th March 1836, after making several pecuniary bequests, disposes of the residue of his estate, in the following terms:

"The residue of my estate, real and personal, to *be equally divided* between the children of my sister *Ann Latimer*, and their heirs forever, and the children of my sister *Penelope Beall*, and their heirs forever."

After the death of the testator, and the payment of his debts by his executor, an application was made to the court for the distribution of his personal estate among the residuary legatees, and it became a question, whether it should be divided *per stirpes or per capita*. This question is an important one to the parties, as *Ann Latimer* had *seven* children, and *Penelope Beall* but *four*.

The orphan's court decided that the legatees took *per stirpes*, and that the seven children of *Ann Latimer* took one-half of the personal estate, and the four children of *Penelope Beall* the other half, and from this decision the appeal was taken.

It appears by the answer of the appellee to the petition filed by the appellants in the Orphan's Court for the distribution, that *Penelope Beall*, one of the sisters of the testator, is alive.

The counsel for the appellant would feel much more confidence in their ability to shew the error of the Orphan's Court, but for the circumstance of this case having been once before under the consideration of this court, and a judgment in accordance with that opinion having been pronounced.

They nevertheless proceed briefly to assign the reasons, and refer to the authorities upon which they rely for a reversal of the judgment.

1. The court will perceive, that the legatees in this case all stand in *equal degree* of relationship to the testator. They are all his nephews and nieces. If then he had died intestate, and they had been his next of kin, they would have taken *per capita*, under the English Statute of Distributions, which has been closely, not to say literally, followed by the act of 1798, ch. 10, sub-ch. 11. That they would so have taken, and that each of the eleven children would have taken an equal share of the estate, the court is referred to 2 *Williams' Ex'rs*, 916, 917, 9?0; *Durant vs. Prestwood*, 1 *Atk.* 454; *Lloyd vs. Trench*, 2 *Ves. Sr.* 215.

2. And in the case of bequest to "relations" or "family" generally, even without mentioning the proportions in which the fund is to be divided, if his next of kin be related to him in equal degree, they will take in *equal shares*, i. e. *per capita*, each being entitled in his own right to an equal share. 1 *Roper on Legacies*, 126; 2 *Williams, Ex'rs*, 930, *note* (*o*). The taking *per stirpes*, always presupposes an inequality of relationship. 1 *Roper*, 128, 129. If then there had not been (as there is) in this case, any words indicating the clear intention of the testator, that these legatees should take in equal shares, still as they all stand in equal degree of relationship to him, they would be so entitled, and each would take an equal share of the testator's property.

3. But independently of these considerations, such a distribution is the proper one, for reasons founded upon the obvious intention of the testator.

His language is, that of the residue of his real and personal estate shall *be equally divided* between the children of two of his sisters, and their heirs forever.

Is that an equal division, which gives to some of these children more than to others ?

According to the distribution directed by the Orphan's Court, the children of *Mrs. Latimer*, of whom there is seven, get but one-fourteenth of the estate, while those of *Mrs. Beall*, of whom there are but four, get one-eighth. If the testator had intended this, would he have used the words "*equally divided*"?

But how stands the matter upon authority. And in bringing to the notice of the court the cases which the appellants' counsel consider as settling the question in their favour, they respectfully suggest that the stream of authority runs all one way, and that not a single opposing decision can be found. The principle which the appellants counsel suppose to be established beyond controversy is this, that whether the legatees are related to the testator in equal degree or not, if the testator has shown an intention that they shall take in equal shares, by the use of the terms, "to be equally divided," (as here) or by expressions of similar import, the distribution will be *per capita.*

In *Thomas vs. Hole,* a leading case upon the subject, which will be found reported sufficiently in 1 *Roper,* 92, *Lord King* decided, that a bequest of £500 to the relations of *Elizabeth Hole,* "to be be equally divided between them," when *Elizabeth* had at the period of the testator's death two brothers, and several nephews and nieces, the children of a deceased brother, should be distributed *per capita,* so that each nephew and niece was entitled to the same share as each brother.

In the same book, 126, 127, the same principle is asserted, and numerous cases cited in support of it.

The court is referred particularly to the following, as clear, decisive, and convincing. *Barnes vs. Patch,* 8 *Ves.* 607, 608. *Dyer vs. Dyer,* 1 *Merrivall,* 414. *Butler vs. Stratton,* 3 *Bro. Ch. C.* 367. *Lady Lincoln vs. Pelham,* 10 *Ves.* 167, 174, 175. *McMeilledge vs. Galbraith,* 8 *Serg. & Raule,* 43. 3 *Brown Ch. C.* 68, 69. *Thomas vs. Hole, Cases Temp. Talb.* 251, and *Maddox vs. State,* 4 *Harr. & John.* 539.

This latter case, it is apprehended, is not so strong in favour of a *per capita* distribution, as the case under consideration; because, in the case of 4 *Harr. & John.* the legatees did not stand in equal degree of relationship to the testator, and if he had died intestate, the division would have been *per stirpes.* The giving the children of the deceased brother, therefore, in that case, an equal share with the living brother, must have been by force of the words, "to be equally divided."

17        v. 11

The court is also referred upon this point to 2 *Williams,* 931, *note* (*o*); and 731, *note* (1).   And to *McMeilledge vs. Barcklay,* 11 *Serg. & Raule,* 103, to show, that the same rule prevails with reference to real estate.

In 3 *Bro. Ch. C.* 68, 69, the court say, that the words "equally to be divided," are the same as "*share and share alike.*"

There is another view of this subject, which is supposed to be conclusive.

It has already been stated, that it appears by the answer of *Penelope Beall,* one of the testator's sisters, and whose childred are some of the legatees, is alive.

Now she being alive, how is it possible that her children can take *as her representatives*?   Could the testator have intended that the enjoyment of his bounty to her children should be postponed until her death? (when he gives her nothing,) and yet this must be the case, if they are made to claim *jure representationis.*

It is clear, therefore, that if they take at all, they must take in their own right, and *per capita.*

The court will find the force which is given to a similar circumstance in the case of *Blacker vs. Webb,* 2 *Pr. Wms.* 383, 386, and *McMeilledge vs. Galbraith,* 8 *Serg. & Raule,* 43.

But neither of these families of children take by representation.   They take in their own right, and *as purchasers.*

No estate or interest in the property whatever was given to either of the parents, whose names were used merely to identify the persons who were the objects of the testator's bounty.

In tracing title to the real estate which passed under this devise, would it be necessary to mount up to the mothers, or would not the inheritable blood flow from the children?

If they take *as purchasers,* as we think there can be no doubt, then, all who answer the description take *per capita.* 2 *Williams,* 931, *note* (*o*); 1 *Roper,* 69, 70.   This would be the case, even if the words "issue" or "descendants" had been used.

In the note (*o*) to 931 2*nd Williams*, it is said, if a bequest is made to "issue," as purchasers, or to "descendants," all those who answer the description will take *per capita*.

The same principle will be found to be asserted in the same book, 729, and in *Crossly vs. Clare*, *Ambler*, 397; 3 *Swanston* 320, note to *Brandon and Brandon*; and *Butler vs. Stratton*, 3 *Bro. Ch. C.* 367. These cases show, that if the testator in the will under consideration, instead of the word "children" of his two sisters, had used the word "issue" or "descendants," as descriptive of the persons to take, that all those who answer the description will take *per capita*.

Ours however, is a much stronger case. Here the term used is "*children*," which is naturally a word of *purchase*, and never converted into a word of limitation, unless absolutely necessary to effectuate the intention of the testator. 1 *Roper*, 69, 70.

In *Buffar vs. Bradford*, 2 *Atk.* 221, Lord *Hardwicke* decided, that a bequest to the testator's "niece, *Buffar*, and her children born of her body, did not lapse in consequence of the death of the niece in the testator's life time; upon the principle that the legatees took as *purchasers;* a judgment which *Roper*, very properly, says, could not have been pronounced, if the child had taken by representation through its mother.

In the case just referred to, the court will perceive, the mother took as a joint tenant with the children; but in our case, the mothers have no interest of any kind. They take nothing under the will, which passes them by, and bestows the property directly upon their children. How then can it be said, that the children take in right of the mothers, when the mothers have no rights to represent.

The latter clause of the will may lead to some confusion, if the relation of the parties is not understood. The testator says in the clause referred to, that the children of *Dr. Latimer* shall have the same share in case of his death, that he would be entitled to if living.

This *Dr. Latimer*, it appears from the petition, is himself one of the children of *Ann Latimer*, the testator's sister, and

the only object of that clause of the will was, to transmit his share to his children, in case of his death before the testator.

Upon the whole it is submitted, that the decree of the orphans' court should be reversed, and a decree passed, directing the personal estate of the testator to be distributed among the legatees in equal shares.

J. M. S. CAUSIN in reply—

This case was argued and decided by the court at the June term 1840, and it was not, as the counsel for the appellee is informed, until the present term that the motion for re-argument was made by the appellant.

After the decision, the counsel for the appellee instructed his client to file in the Orphans Court of *Charles* county, a copy of the judgment of affirmance, and demand his share of the property bequeathed; this the counsel is informed has been done, and that the *Bealls* have received their portions of property graduated by the decision of this court at the June term, and have given their several receipts for the same. Steps have also been taken founded upon this decision by the trustee of one of the *Latimers*, (heirs under the will) to distribute his property, as an insolvent debtor, with a reference to that decision. Whether the *Latimer's* property has been actually so distributed, the counsel for the appellee has not been *distinctly* informed—it is probable that such distribution has not been made.

The counsel for the appellee regards the motion for a re-argument as somewhat in the nature of an application for a new trial; but he is not apprised that any new arguments have been advanced, or new authorities quoted, to prove an error in the former decision of the Court of Appeals. Under this impression he considers the privilege of re-argument extended by the court to the appellants, as resulting *ex gratia*, rather than evincing any intervening doubt of the propriety of their decision. In this view he is compelled to repeat to the court the course of argument originally pursued by him.

The first point of the appellant's argument is erroneous.

It supposes that if *Ford* had died intestate, the division of his property, as regards the legatees in the will, would have been *per capita.* It is admitted that *Penelope Beall* is alive, and that *Mrs. Ann Latimer* was dead at the time of the death of the testator. In such case had he died intestate, it is evident that *Mrs. Latimer's* children would have only received the mother's share of the property,—taking *per stirpes* and not *per capita.*

The second point rests upon a case not presented by the record, of a bequest to "relations" and "family" generally, and even admitting the law as therein stated, it affords no rule of construction to the present case.

It is argued by the appellant's counsel that the "language of the testator" is that the residue of his real and personal estate shall be "equally divided between the children of two of his sisters and their heirs forever," and from such language the intention assumed by the appellants is inferred. No such language can be found in the will—and the quotation destroys distinctions and divisions in the phraseology of the bequest, which the appellee deems essential to its proper construction. But without particular reference to the appellants' arguments, the appellee begs leave to state to the court upon what grounds they claim the continued sanction of the opinion delivered at the June term.

Starting with the acknowledged position, that the rule of construction of wills is "the intention of the testator," (that intention violating no moral or established legal principle) and that the "nature of the estate passed by the will shall be determined from the face of the will alone," it is evident that each will almost necessarily presents an original case,—since the *intention*, which is the rule, being only deducible from that will, no other will can in the nature of things supply that rule, and consequently other cases of authority can only be brought to bear in establishing the proper construction, in so much as such cases have given a legal solemnity and technicality of meaning to similar terms or expressions used, in the will which happens to be the subject of adjudication.

In this view of the case, the authorities cited by the appellants' counsel, are only formidable when they arise from cases similar to that now presented.

The counsel for the appellee respectfully contends, that none of the cases cited are characterized by terms of material import, such as occur in the will before the court.

The bequest in question is in the following words:—"The residue of my estate, *real* and personal, to be equally divided between the children of my sister *Ann Latimer* and their heirs forever, and the children of my sister *Penelope Beall* and their heirs forever."

The court will perceive, that both *real* and personal property are the subjects of this claim. Most of the cases cited are confined to bequests of personal property, overlooking the fact, which we deem important, that real estate was devised by this will.

We do not mean to contend, that the rule of construction is affected by the fact of real estate being devised in the same clause with a bequest of personal property, but that in the present case it forms a material circumstance from which to deduce the intention of the testator.

The word heirs, in a will, was formerly necessary to give effect to a fee-simple devise of real property; without them or equivalent terms, the devise was only for life, and although by Statute of Maryland this necessity is removed, yet when the word is used in a will, it must be taken with reference to the sense in which it is generally applied.

It is evident, from the terms as here used, that the intention of the testator was to give to the children of *Ann Latimer*, in the first division of the clause, a fee simple estate in the land devised, and it is further apparent, that if the latter clause of devise to the children of *Penelope Beall* was erased from the will, the intent would still be complete and perfect. In no case could they take more than a moiety, and the clause of devise to *Penelope Beall's* heirs is not necessary, to designate either what share *Ann Latimer's* children take, or what quantity of estate. The interests are *distinct* and *independent*, not

mingled or in common. If the testator did not intend to sep-
arate the interests, why disjoin the clauses under which they
take; why not give it generally to the two classes of children
and their heirs in common.

There is no reason either in law or the customary usage of
phrase, thus to divide the interests, unless it was attended,
that in fact they should be so distinct and separate.

We contend, then, that deducing the intention from the face
of the will, it is evident that the testator did not contemplate
the two clases of children "and their heirs forever," common
participators in his bounty, but as far as language could con-
vey his meaning, he proposed to divide them into two distinct
classes of heirs, to each of which was assigned its propor-
tionate part, entirely independent of the other.

The order of the words used is an important rule of con-
struction in arriving at the intention of the testator, and no
words are to be rejected which would aid the court in assert-
ing that intention. 19 *Vesey,* 654.

Too much stress, it seems to us, is laid upon the general
current of authorities quoted by the appellants' counsel, es-
tablishing the principle as a general rule, that the words *"chil-
dren," "descendants," "issue,"* designate a *per capita* distri-
bution. The rule is general—but it only applies to cases
where its general description is not negatived by other terms
of bequest indicating a different intention. *Davenport vs.
Hamburg,* 3 *Vesey,* 258. *Ward on Leg.* 123, 18*th Law Li-
brary. Wythe vs. Thurlston, Amb.* 555.

We contend in this case, that the separation of interests
made by the phraseology of the bequest, the moiety of estate
or interest first conveyed to one class of legatees, before the
other is named,—the two classes being perfectly independent
of aid from each other to ascertain their respective interests—
all go to control the general meaning attached to the word chil-
dren, as used in the authorities quoted by the appellants.

It is argued by the appellants, that the *Bealls* cannot take by
representation, as their mother is alive. We do not contend
for it. We claim that the word children, as here used, is a

word of purchase,—a designation of a class, not as estab-
lishing relationship,—a term used by the testator as distin-
guishing those whom he meant to partake of his bounty,—
that they do take in their own right under the will, and that
this term may be used in the distinct limited, sense that we at-
tach to it.   *Ward on Legacies*, 18 *Law Library*, 123.   *Pow.
on Devises*, 22 *Law Library*, 175.

The court will perceive, that in nearly every case cited by
the appellants, a joint property is in terms given, before the
division or degrees of interests is specified.   Thus in 1*st
Merival, Dyer vs. Dyer*, 414, cited by the appellants, the be-
quest is "to *Edward North's* children and *Ann Price's* chil-
dren," "to be equally divided between them."   The interest
first conveyed is joint, and the words subsequently used do
not sever it.

Such will be generally found the terms of bequest in the
other cases cited—all clearly conveying a joint interest to the
parties to take.

In the case at bar no joint estate is given, but each class
of children takes its share entire and independent of the other.
No terms of joint interest are used, either to characterise the
estate conveyed in the bequest, or in the interests conferred
by it.

In case of *Maddox vs. The State*, 4 *Harr. & John*, 539, is
much relied on by the appellants.   The appellee conceives it
is equally liable to the objections urged to the applicability of
the other authorities cited by the appellant, to the case before
the court.   The clause of bequest in that case, was not dis-
tinguished by the distinct separation of classes which occurs
here.   The terms are, "to be equally divided between my
brothers *Justinian* and my brother *George's* children;" the
parties to take are there connected by the copulative conjunc-
tion, and no such distinction is drawn, between the interests
of the parties there, as in this case, and if the term "heirs",
had been used, it would have been the common heirs of both.
Here the distinct fee-simple interest in half the property is
given to the heirs of *Ann Latimer*, and there an equally dis-

tinct fee-simple interest in the other half of the heirs of *Penelope Beall.*

The question here involved does not appear to have been argued in *Maddox vs. The State. Stone* for the appellant only urged two points: 1st. That the bond upon which the action was brought was about twelve years standing. 2nd. That the parties for whom the action is brought, claiming under different rights, could not be joined in the same action.

Although the court concur in the several opinions of the court below, the point which the court seems to have decided was, that limitations to be availed of, must be pleaded.

So that if the court should deem this to be in some measure a precedent decision, it does not seem to the appellee to have been of that deliberate character as distinctly to settle the sole issue here made.

The court refused to open the judgment.

JUDGMENT AFFIRMED.