# WHITLOCK CORDAGE COMPANY.

## *vs.*

## HORACE L. HINE, ET AL.

*Decrees: enrolment; setting aside; delay, when not laches. Deeds*
*of trust for benefit of creditors: receivership;*
*contracts relating to—.*

In general, a decree or decretal order after enrolment, can be
revised or annulled only by a bill of review, or original bill, and
not by a petition.                                      p. 102

But when the case was not heard upon the merits, or where
the circumstances are such as to satisfy the Court that the decree
should be set aside, or where the decree was entered by mistake
or surprise (or fraud) the question may be raised by petition.
p. 102

Certain receivership proceedings for winding up a partner-
ship and paying the creditors lay in Court for nearly twenty
years; some assets then becoming very valuable were sold, and
an audit was had, and an account stated and finally ratified, to
one class of creditors, without notice to all parties in interest, it
was *held,* that the question of whether the decree of ratification
should be set aside, could be raised by petition.      pp. 107-108

In such a case, a delay of seven months after the final decree
of ratification, is not such a delay as to bar relief.    pp. 109-110

Where a receivership case has lain in Court for nearly 20
years, creditors will not be presumed to have been continuously

watching to see whether an audit was made, and a delay of six weeks after becoming aware of the audit, is not an unreasonable delay.                                   p. 110

Receivership proceedings were instituted to wind up a co-partnership and pay off the creditors; one of the partners made also a deed of trust of all his individual property for the benefit of his creditors; the trustee in this deed of trust was the same individual as the receiver; the partner subsequently guaranteed the indebtedness of the receiver to one of the receiver's creditors, and later filed in the trust estate case his authority and direction to the trustee, after settling the expenses and debts due by himself in the trust estate, to transfer the balance to the receiver for the purposes of such receivership. *Held,* that the guarantee of one creditor's debt had no priority, but all the surplus individual assets were applicable to the payment of the receiver's unpaid creditors without preference.                p. 111

*Quære*: Whether a non-resident can come into a Court of this State, employ a solicitor to represent him in recovering a claim from an estate under the control of the Court, and then, if some proceeding is instituted in reference to the claim in accordance with the established practice of the Court, take the position that service can not be had on the solicitor of record who represented that claim.                        p. 109

*Decided January 14th, 1915.*

Appeal from the Circuit Court No. 2 of Baltimore City. (AMBLER, J.)

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*John Hinkley,* for the appellant.

*R. Bayly Chapman* and *Emory L. Stinchcomb* (with whom was *W. H. DeCoursey Wright* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a decree passed in the case of *Lord*
v. *Sprigg,* rescinding the ratification of Auditor's Account
No. 17, in so far as it directed the distribution of $3,521.45
to the Lawrence Cordage Works (now Whitlock Cordage
Co.), and decreeing that the appellant pay to the receivers
the said sum awarded to it by said account. The case of
*Lord* v. *Sprigg* was instituted on June 2nd, 1893, for the
purpose of winding up the affairs of the firm of Chas. W.
Lord & Co. Upon the filing of the bill Winfield J. Taylor
was appointed sole receiver of the firm, and, upon his peti-
tion, an order was passed directing him to continue the busi-
ness until the further order of the Court. On the same day
Mr. Lord made a deed of trust to said Taylor of his indi-
vidual property for the benefit of his creditors. Both trusts
are being administered in Circuit Court No. 2 of Baltimore
City. Taylor, as receiver, conducted the business, under
authority from the Court, for about eighteen months, and
negotiated an agreement of compromise with the creditors
of the firm at forty cents on the dollar. He made substantial
losses and on January 14th, 1895, the Court appointed Sam-
uel D. Schmucker co-receiver. Winfield J. Taylor having
retired, and JUDGE SCHMUCKER having died, W. Starr Gep-
hart and Herbert M. Brune are the present receivers. Shortly
after JUDGE SCHMUCKER was appointed, the assets remain-
ing in the receivers' hands were sold and the money realized
was distributed. Exceptions were filed to the audit, and the
Court was called upon to determine the priorities of the cred-
itors in the insolvent receivership.

The case was brought to this Court, and is reported as
*Diamond Match Co.* v. *Taylor,* 83 Md. 394. As seen by that
case, many of the creditors agreed to accept forty cents on
the dollar, payable in notes, the assets to remain in the hands
of the receivers as security for the payment. In continuing
the business, with the sanction of the creditors, the receiver,
Mr. Taylor, incurred debts for goods purchased from cred-

itors of the firm, and also from persons not such creditors. He paid most of the composition notes and compromised with certain creditors, who had attached the individual property of Charles W. Lord, at a rate in excess of forty per cent. Exceptions were filed to the auditor's accounts, wherein commissions were allowed the receiver and he was credited with the total sums paid by him in settlement of the attach-ment suits against Charles W. Lord. The account showing the receipts and disbursements of the joint-receivers was rati-fied and confirmed, but the exceptions to the other accounts were sustained. On October 31st, 1895, another order was passed referring the case back to the auditor with directions to make distribution of the funds in the receivers' hands to the first, second and third classes as set out in 83 Md.—the first having priority over the other two classes, and the second over the third. The appellees are in the third class, as is also the appellant, unless it can establish its claim for a priority as hereinafter shown. The method of distribution was affirmed by this Court. The case was before us again, reported as *Gephart* v. *Taylor,* 124 Md. 111, but the questions then disposed of are not involved in this appeal.

By different auditor's accounts the creditors of the first class were paid in full and some payments were made to those of the second class. On March 19th, 1895, the Lawrence Cordage Works filed an account in the receiver's case showing a balance due it of $1,713.57, and attached to that account are the following papers:

"Baltimore, November 28th, 1894.

As receiver of Charles W. Lord & Company I under-take and agree to pay to the Lawrence Cordage Works, or its assigns, $250 on December 4th, 1894; and $250 in weekly instalments thereafter, until my indebted-ness, as receiver, to the Lawrence Cordage Works, which now amounts to $2,343.57, shall have been paid in full, with interest thereon from November 1st, 1894. (Signed) Winfield J. Taylor, Receiver of Chas. W. Lord & Co.

> For value received, I hereby guarantee the punctual performance and payment to the Lawrence Cordage Works, and its assigns, of the within undertaking and obligation of Winfield J. Taylor, receiver, and each and every instalment thereof. Witness my hand and seal this 28th day of November, 1894. (Signed) Chas W. Lord (Seal)".

Several payments were made by the receiver, thus reducing the claim to the amount stated above. When Charles W. Lord made a deed of trust he held amongst other property 64 40/100 shares of the capital stock of the Peabody Heights Co. That stock became very valuable—there having been cash dividends of $275.00 and $125.00, and the stock finally realizing $350.00 per share, in May, 1912. There was filed on December 21, 1894, in the trust estate of Charles W. Lord, the following paper:

> "In the Circuit Court No. 2 of Baltimore City. In the matter of the trust. estate of Charles W. Lord. I hereby authorize and direct Winfield J. Taylor, trustee of myself, after he has settled the expenses and paid all debts due by me individually in said Trust Estate, to transfer all the balance of property in his possession as such trustee, or to which he may be entitled to such, to Winfield J. Taylor, receiver of Chas. W. Lord & Co. (in the above Court case of *Lord* v. *Sprigg*) for the purposes of said receivership; and I hereby assign and transfer to such receiver subject to the proper expenses and. debts of my individual. estate all my individual property for the purposes and debts of said receivership. Witness my hand and seal. Chas W. Lord (Seal)".

On May 1st, 1912, an audit was filed in that estate by which the Trustees (who. are the same persons as the receivers) were charged with certain amounts and were credited with certain commissions, expenditures, etc., and the 64-40/100 shares of the stock of the Peabody Heights Co.,

subject to an overpayment by the trustees, were distributed
to the receivers, in conformity with the assignment to Taylor
on December 21, 1894. That audit was ratified May 23,
1912, and the receivers sold the stock of the Peabody Heights
Co., with approval of the Court, for $22,500.00 subject to
broker's commissions and the overpayment of $4,177.33 by
the trustees.

On June 18, 1912, the auditor filed an account in *Lord*
v. *Sprigg* (the receiver case) marked Auditor's Account No.
17, by which he charged the receivers with certain amounts,
including the proceeds of sale of the Peabody Heights Co.'s
stock, and, after crediting them with commissions, costs, etc.,
distributed $3,521.45 (including $1,802.31 interest) to the
Lawrence Cordage Co., $4,216.84 to balance due the cred-
itors in Class No. 2, and $8,132.82 to the administrators of
Charles W. Lord. That account was ratified on June 29,
1912—no exceptions having been filed to it. On February
13, 1913, Horace L. Hine filed a petition in which he
prayed: (1) That the order ratifying the Auditor's Account
No. 17 be rescinded; (2) that an order be passed requiring
the administrators of Charles W. Lord to pay to the receivers
the sum of $8,132.82 distributed to them; (3) that the Law-
rence Cordage Works be required to pay to the receivers the
sum of $3,521.45 distributed to it; and (4) that the re-
ceivers be required to distribute the said sum of $11,654.27
among all of the creditors of the third class, as defined by
the decree of October 31, 1895. On February 13, 1913, an
order was passed in accordance with the prayer of the peti-
tion, subject to cause to the contrary being shown on or be-
fore the 28th day of February, 1914, and providing for a
copy of the petition and order being served on the Lawrence
Cordage Works or Arthur George Brown, its attorney, and
on the receivers and the administrators of Charles W. Lord
on or before the 18th of February, 1913. A copy was served
on Mr. Brown. On February 28th, 1914, the appellant,
through John Hinkley, solicitor, demurred to the petition.
On September 17th, 1913, Messrs. Sayre and Lewis, execu-

tors of Harold R. Lewis, were made parties defendant and
on that day the demurrer was overruled with leave to answer.
On October 11, 1913, the appellant did file an answer which
was sworn to by its treasurer.

The answer denied that the order ratifying the auditor's
account was improvidently and improperly passed, and al-
leged that the account contained an express adjudication by
the auditor that the claim of respondent was guaranteed by
Charles W. Lord, individually, and the said claim was there-
fore given a priority, not only over the creditors of the third
class, but also over those of the second class; that the order
of June 29, 1912, having been enrolled cannot now be re-
scinded except by a new bill filed for the purpose; that even
if the lapse of time after the enrollment would not prevent
it being reopened, as the fund is no longer in the control of
the Court, but has been paid to the respondent, any proceed-
ing for a refund of said amount should be brought in the
form of a new action; and the Court has no jurisdiction upon
the petition to set aside the decree for the payment of the
money, paid over seven months before the filing of the peti-
tion, and under which decree the money has actually been
paid away and is out of the control of the Court. The guar-
anty, assignment, etc., are then referred to and relied on.

It must be confessed that it is not always easy to deter-
mine under the authorities when a petition to rescind an
order or set aside a decree, which has become enrolled, should
be entertained. The general rule undoubtedly is that a de-
cree or decretal order, after enrollment, can be revised or
annulled only by a bill of review or original bill and not by
a petition, but there are exceptions to the rule, equally well
established as the rule itself, which are generally classified
as follows: (1) In cases not heard upon the merits. (2)
Where the circumstances are such as to satisfy the Court
that the decree should be set aside, and (3) where the decree
was entered by mistake or surprise. As this question not
infrequently arises, it will perhaps be well to recall what
has been decided in this State, even at the risk of making

this opinion longer than desirable. In *Oliver* v. *Palmer,* 11
G. & J. 136, the defendants were returned summoned, and,
not appearing, the complainants obtained a decree declaring
that they were entitled to some relief and an order for a com-
mission to take proof in support of the allegations of the bill.
The Court held that a bill or petition could be filled to vacate
the enrollment of a decree alleged to have been obtained by
surprise, and to let in the defendant to answer. The Court
referred to the decision in *Benson* v. *Vernon,* 4 Bro. Par.
Cases, 546, in which the defendant was in contempt for not
answering and the bill was taken *pro confesso,* and said: "In
neither case were the merits of the defendant's case developed.
In each, the object and design would be the same, to get rid of
the decree, that defendant's defense to the merits might be let
in. In point of principle, it seems to us difficult to distinguish
the cases. Technically it may be true, that in the one case, the
decree would be on the merits, and the other not; but in
point of fact, in neither case would the decision be on the
merits of the defendant's case, not having filed his answer,
or taken his testimony." The Court said: "Had the design
been to set aside the decree for fraud, the remedy would
clearly have been by bill of review, and not by petition."
That case makes some explanation of what is meant by "the
merits" and "surprise," as used in this connection by the
authorities. In *Marbury* v. *Stonestreet,* 1 Md. 147, many
cases are cited, and the Court said: "From these cases it
appears, that there has been no settled practice on these sub-
jects." The Court also spoke of the practice when the fund
had been distributed, which we will refer to later.

*Thruston* v. *Devecmon,* 30 Md. 210, and *Herbert* v.
*Rowles,* 30 Md. 271, are good illustrations of the two classes
of cases. In the former it was held that a petition filed after
enrollment which suggested fraud and malpractice, not in
reference to obtaining the order of ratification, but in regard
to the claims allowed the appellee, was not sufficient. JUDGE
ALVEY said: "The only proper modes recognized by law, for
reversing or annulling a decree or a decretal order, after en-

rollment, in the absence of surprise or irregularity in obtaining it, are by bill of review for errors apparent on the face of the proceedings, or for some new matter discovered since the order or decree passed, or by original bill for fraud." He referred to the fact that the proceeding in *Oliver* v. *Palmer* was of an *ex parte* character, and the petition was filed on the ground of surprise, and there was no allegation of fraud. He quoted from that case, where it was said: "Had the design been to set aside the decree for fraud, the remedy would clearly have been by bill of review, *and not by petition."* In *Herbert* v. *Rowles* it was held that in cases not heard upon the merits, and in which it is alleged the decree was entered by mistake or surprise, or under such circumstances as should satisfy the Court, in the exercise of a sound discretion, that the enrollment ought to be discharged and the decree set aside, relief can be given on petition. JUDGE ROBINSON said: "The decree in such cases being by default, and not upon the merits, the cause of the default can never be the subject of inquiry until the decree has been pronounced, and generally not until *after the term* has passed. Without the exercise, therefore, of this power in the Court to vacate the enrollment, a party against whom a decree had been entered and enrolled by *mistake or surprise,* and without any *laches* on his part, would be without redress, however meritorious his defense may have been." Then after showing that a bill of review would be of no avail, because the claim for relief is not based on error apparent in the decree or newly discovered evidence, and as there was no fraud in obtaining the decree, he could not file an original bill on that ground, he added: "Accordingly it is laid down by the most eminent elementary writers, and fully sustained by adjudged cases, that where a case has not been heard upon the merits, the Courts will, upon good cause being shown 'exercise a discretionary power of vacating an enrollment and giving the party an opportunity of having his case discussed,' 2 *Daniel Ch. Prac.* 1230; 2 *Madd. Ch.* 466."

In *First Nat. Bank* v. *Eccleston,* 48 Md. 145, it was held that the enrollment of a decree passed by default, without a hearing upon the merits, may be vacated, to let in a meritorious defense, upon *petition,* without a bill of review or an original bill for fraud. In *Gechter* v. *Gechter,* 51 Md. 187, it was said that the power of the Court to vacate under a petition a decree not only alleged to be procured by fraud, but which was also a surprise to the party, cannot be considered an open question, since the decision of *Herbert* v. *Rowles, supra.* In *Patterson* v. *Preston,* 51 Md. 190, a petition was filed to have an order of ratification of sale passed about eight years before rescinded. An audit had also been ratified distributing the proceeds of sale. JUDGE MILLER said: "We entertain no doubt as to the power of a Court of Equity, upon a proper case being made by the alleged purchasers, to rescind an order ratifying a sale reported by its trustee." An order dismissing the appellant's petition was reversed and the cause remanded to the end that the sale be vacated, etc. In *Downes* v. *Friel,* 57 Md. 531, relief was refused upon petition, but the petition did not allege fraud, mistake or surprise in entering the decree, and the case was submitted to the Court for a decree, without argument, by a written agreement of solicitors. In *Trayhern* v. *Mech. Bank,* 57 Md. 590, it was said that the order of November 20th, 1879, had become enrolled and could not be set aside on petition, *"except upon a showing of fraud, surprise or mistake."* Mrs. Trayhern's account had been excepted to in the audit, and the exceptions were overruled, and the audit ratified November 20th, 1879. Before the term expired, the bank filed a petition asking for a rescission of the order of ratification. During the next term, the Court dismissed that petition— leaving the order of November 20, 1879, undisturbed. Later another creditor filed a petition and the Court remanded the case to the auditor, suspended the order of November 20, 1879, and rescinded the order of February 28, 1880, whereby the petition of the bank was dismissed. Of course, in that case the claim of Mrs. Trayhern could not be reopened

on petition. It had been litigated and established in her favor, and the mere fact that another creditor was objecting did not authorize the question to be reopened upon petition, as was explained in the opinion. In *Straus* v. *Rost,* 67 Md. 465, a bill was filed for the sale of property left by the grandfather of the appellee. The appellee, an infant, was made a defendant, and answered in the usual way, by his guardian. The decree for the sale was passed in July, 1880, and the trustee from time to time made sales of different parts of the property, and these were duly reported and ratified. Several accounts distributing the proceeds were stated and ratified, the last in September, 1882. No portion of the proceeds of sale was distributed to the appellee, nor was any notice taken of his rights, but the whole of his share was distributed to appellant, who was the purchaser of the property and claimed his share under a mortgage given by the father of the appellee. On February 21, 1887, the appellee by his next friend filed a petition against Straus setting forth the above facts, praying that the several audits be rescinded and that the petitioner be allowed his share of the proceeds with interest. The petition did not attack the decree nor impeach the title of the purchasers, nor did it assail the ratification of the audits on the ground of fraud. It nowhere appeared that the attention of the Court was ever called to the construction of the will or the rights of the appellee thereunder. The Court said: "It is a case, therefore, where the Court, through mere inadvertence or mistake, and without having its attention called to the subject, ratified the accounts assailed by the petition," and the order sustaining the proceeding by petition was affirmed. In *United Lines Tel. Co.* v. *Stevens,* 67 Md. 156, it was held that when a decree or decretal order has been enrolled, it can only be vacated, where fraud in its obtention is charged, by original bill filed for that purpose. In *Mallery* v. *Quinn,* 88 Md. 38, it was held that when a decretal order is passed *ex parte,* and without a hearing upon the merits, it may after enrollment be vacated upon petition, when the Court is satisfied

that the order should be set aside, or was entered by surprise
or mistake, and would operate as a fraud upon the rights of
others.    It was said that the averment in that case of fraud
"has relation, not to the *obtention* of the order, but to its
*effect* after it had been obtained," and hence did not require
an original bill.    In *Primrose* v. *Wright,* 102 Md. 105, it
was said that a Court of Equity has the power, upon petition
or motion, to correct a clerical error in a decree or order
after its enrollment, and the power to correct mistakes in its
proceedings at any time is not affected by Equity Rule 51.
In *Royal Arcanum* v. *Nicholson,* 104 Md. 472, it was held
that an order of Court confirming the inquisition of a jury,
that a certain person was insane, and appointing a committee,
when no notice of the proceeding was given to the lunatic,
may be vacated upon petition to set the same aside, although
the order has become enrolled.    In *Foxwell* v. *Foxwell,* 118
Md. 471, the exceptions to the general rule as to enrolled
decrees or orders were again fully recognized.

We have thus collected and considered most of the prin-
cipal cases in this State on this troublesome question, and
our conclusion is that the cases of *Oliver* v. *Palmer, Herbert*
v. *Rowles, First Nat. Bank* v. *Eccleston, Gechter* v. *Gechter,*
*Patterson* v. *Preston, Straus* v. *Rost, Mallery* v. *Quinn,*
*Primrose* v. *Wright, Royal Arcanum* v. *Nicholson* and *Fox-*
*well* v. *Foxwell,* fully sustain the right of the appellees to
proceed by petition, under the circumstances of this case.

The audit in question was made without any notice to
those who were the real parties in interest, not only in so far
as the payment in full of the appellant's account is con-
cerned, but even as to the fact of an audit having been filed.
There was nothing in the claim itself to suggest that the
appellant would ask priority for it over the other creditors
of his class.    There is nothing to indicate that the Court's
attention was called to the assignment filed December 21,
1894, and the reference in the auditor's report to the allow-
ance of the appellant's claim would not cause the Court to
examine it to see whether it was receiving an unauthorized

priority. It was not determined upon the merits, was unquestionably a surprise to the appellees and the circumstances were such as to satisfy the Court that the decretal order should be set aside, as will be further seen later when we pass on the assignment and the guaranty.

We are likewise of the opinion that the other cases mentioned do not conflict with that conclusion, but are distinguishable for reasons which we have stated in referring to them, unless it be *Marbury* v. *Stonestreet,* in which one of the four judges was of the opinion that the appellant should have proceeded in the former case, and not by an original bill. It was there said: "When the sale has been finally ratified, the fund distributed by an audit and confirmation, and the term passed, a bill, either original or of review, is required, because these proceedings ascertain and determine the rights of the persons interested in the proceeds of sale. The suit is then considered as closed, and such proceedings must be resorted to as will bring the parties again before the Court." That question was not in anywise involved in that case, for in the first place that was a proceeding by an original bill, and not by petition, and moreover the fund had not been distributed.

But in *Straus* v. *Rost, supra,* the proceeds had been distributed and the audits ratified,—the last one over four years before the petition was filed. In *Mallery* v. *Quinn, supra,* that fact was referred to, and in that case it was determined that under a petition an order authorizing a trustee to release a mortgage must be rescinded, the release of the mortgage should be cancelled, and that Mrs. Quinn should return the money with interest to the trust fund. So it cannot be said that the above statement from *Marbury* v. *Stonestreet* is now recognized as the law of this State as applicable to all cases, if we are to be guided by the later expressions of this Court, made when the questions were directly involved.

There may unquestionably be cases in which it would be necessary to file an original bill, in order to bring the parties back into Court. It is not necessary to determine whether

the lower Court could have passed a valid order rescinding the order of ratification of this audit, if the appellant had not appeared, for it did appear by solicitor, demurred to the petition, and subsequently answered the petition, by an answer which was sworn to by its treasurer. There is nothing in the record to show that the relation of attorney and client between the appellant and Mr. Brown had so far ceased as to prevent service on him of an order of this character. That question was not raised. In *Carroll* v. *Lee,* 3 G. & J. 504, where the party and the property were beyond the limits of the State, at the institution of the suit of which the defendant was notified by an order of publication, the Court said: "There might be something, perhaps, in this concurrence of facts, if the property had not been removed out of the State, and the appellant had not appeared and answered the bill, as well as except to the jurisdiction. This he did, and contested the question of merits before the Chancellor, whether the complainant had a right to recover; and if the decree had been in his favor, would assuredly have forced his adversary into the Court of Appeals or forever barred him from further suit for the same property. To say nothing of the effect of the answer upon the plea, this, we conceive, is a waiver of it, and a submission to the jurisdiction." It might well be questioned whether a non-resident can come into a Court of this State, employ a solicitor to represent him in recovering a claim from an estate under the control of the Court, and then, if some proceeding is instituted in reference to the claim in accordance with the established practice of the Court, take the position that service cannot be had on the solicitor of record who represented that claim. Such a position would often be embarrassing to solicitors, especially those of the high standing of the former and present attorneys of the appellant. But for reasons we have stated, it is not necessary to further discuss the question.

Nor do we think the appellees can be charged with laches under the circumstances. The case has been pending for many years, and the creditors could not have been expected

to be constantly watching to see whether an audit had been made. Those of the third class certainly had no reason to suppose that they were to be entirely deprived of any distribution, by having one creditor obtain priority for its whole account. It is conceded that no notice to the creditors of the third class was given of the audit having been filed, which as shown by the auditor's testimony would have been done if he had known they were interested. Nor do we think that the delay in filing the petition for about six weeks after the appellee Hine became aware of the audit was unreasonable. It would necessarily take some time to arrange with counsel, and the solicitors employed would require considerable time to go through the papers in a case of this character, and give them proper consideration. In *First Nat. Bank* v. *Eccleston, supra,* JUDGE MILLER referred to the fact that in *Herbert* v. *Rowles,* the decree was passed in July, 1865, and a petition to vacate its enrollment was not filed until April, 1866, although the pendency of the proceedings was known to the petitioner's counsel, and added, "yet it is plain from the opinion in that case, that this lapse of time would not have been considered a bar to the relief," if sufficient ground for it had been shown. He said: "We there adopted what was said by LORD HARDWICKE in *Kemp* v. *Squire,* 1 Ves. Sen. 205, that the power of the Court to open the enrollment is a discretionary power to be exercised or not *according to the circumstances of the case,* as being applicable, as well to the time when the petition is to be filed, as in other respects."

Coming now to the two papers relied on by the respective parties, it is clear that the guaranty did not authorize the distribution to the appellant out of the proceeds of Mr. Lord's individual property, to the prejudice of other creditors of the receivership, unless there be something in what we will speak of as the assignment of December 21, 1894. That assignment is not dated, but was filed in the trust estate of Charles W. Lord on that day. The guaranty was made nearly eighteen months after the deed of trust was executed,

and hence was in no sense one of the debts then due by Lord and provided for in that deed of trust. It was not an assignment of any property or funds of Lord. The individual property he owned at the time he made the deed of trust (of which this was a part) was liable for his individual debts and then for his partnership debts, but it was not originally liable for debts incurred by the receiver. The guaranty did not authorize the proceeds of the Peabody Heights stock to be applied to it, more than it was to be applied to any other debt, and those proceeds could not be impounded for the benefit of the guaranty. If the assignment filed December 21, 1894, had not been executed, it is certain that the amount due under the guaranty could not have been audited out of the proceeds of this stock. It therefore remains to see whether that assignment gave the appellant any priority out of the fund.

It is headed, "In the Circuit Court No. 2 of Baltimore City. In the matter of the trust estate of Charles W. Lord." It authorizes and directs "Winfield J. Taylor, trustee of myself, after he has settled the expenses and paid all debts due by me individually, *in said trust estate,*" to transfer, etc. It is clear that Taylor as his trustee, could not, under that provision, pay in said trust estate any debts due by Lord except those he owed when he made the deed of trust. The debt due to the appellant by virtue of the guaranty was not a debt due by him in said trust estate. It then provides "And I hereby assign and transfer to said receiver, *subject to the proper expenses and debts of my individual estate,* all of my individual property for the purposes and debts of said receivership." The "debts of my individual estate" can refer to no other than those in the trust estate, any more than could "the proper expenses." It seems to us to be beyond question that Mr. Lord simply intended by that paper to authorize his trustee to turn over to the receiver what was left after the expenses and debts in the estate of which Taylor was trustee were paid, and subject to those expenses and debts he assigned and transferred all of his individual estate

"for the purposes and debts of said receivership,"—and no suggestion of any priority to the appellant, or anyone else, is made.

We do not understand how the compromise with Lord's administrators can affect this question. The theory of the appellees, as we understand it, is that the appellant was improperly paid a certain amount, and Lord's administrators were improperly paid another amount, both of which belonged to the receivership. They have taken these proceedings to have the amounts recovered, for the purpose of distribution among the creditors entitled to them. They have done nothing to release the appellant, and if they are willing to accept less than they claim to be entitled to from Lord's estate, that cannot injure the appellant, so far as we can find from the record. Of course, if in the distribution of the funds to be returned to the estate, it be shown that the appellant is injured by any improper action of the appellees and others uniting in the compromise, it can then receive such protection as it is entitled to.

Difficulty in recovering the amount from the appellant is suggested in the brief, but that is not now before us. If it does not voluntarily comply with the decree, after it has been determined by this Court that it was not entitled to the amount distributed to it, the necessary steps to recover it can be taken. Under the circumstances we are of the opinion that the decree appealed from must be affirmed.

*Decree affirmed, the appellant to pay the costs.*