# WALTER S. GALLOWAY

## *vs.*

# JEANNETTE N. GALLOWAY.

*Divorce: setting aside decree after enrollment; rule for—.*

While influenced by threats of her husband, and under his control, a wife signed a letter, which had been read to her only in part, and which was a letter addressed to an attorney authorizing him to appear for her in divorce proceedings, to be instituted by the husband; it had not been disclosed to her what was to be the ground on which the divorce was to be sought for, nor had it been disclosed to her that the attorney's duties were restricted to the filing of an answer, or that he was not to appear for her at the taking of the testimony; the decree was passed on March 10th, and the petition for its annulment filed on July 28th following; it was not shown that before the filing of the petition the status or position of the husband, as a result of the decree, had been in anywise changed; a demurrer to her petition to have the decree of divorce stricken out having been overruled, on appeal it was: *Held,* that upon all the facts of the case, although the decree had been enrolled, the overruling of the demurrer was correct.                    p. 517

In general, after enrollment, a decree or decretal order, can be revised only by a bill of review or original bill, and not by petition, excepting where the case was not heard upon its merits, where the circumstances are such that the Court is satisfied that the decree ought to be set aside, or where the decree was entered by mistake or surprise.                    p. 516

*Decided April 7th, 1915.*

Appeal from Circuit Court No. 2 of Baltimore City. (AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Howard Bryant* and *Harry N. Abercrombie,* for the appellant.

*Henry J. Broening,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

In this case the appellee, on the 28th day of July, 1914, filed her petition against the appellant asking that a decree divorcing her from him, granted on the 10th day of March, 1914, be annulled and set aside and that she be permitted to further answer and take testimony on her behalf upon the issues joined. A demurrer to the petition was filed which was overruled. It is from the order of Court overruling the demurrer that this appeal is taken, and therefore it will be necessary for us to state fully the facts alleged in the petition.

The petition alleges that the appellant filed his bill for said divorce on the 24th day of January, 1914. The appellant at such time was living separate and apart from the appellee, because, as he had stated, "their living together was not conducive to his happiness and he felt hampered in his movements." The separation, which occurred October 7th, 1912, left the appellee without any means of support, and it was through the intercession of her counsel, William A. Wheatley, Esq., an attorney of the Baltimore Bar, that she received from the appellant the sum of seventy-five dol-

lars a month, which was paid to her to the first day of March, 1914, when such payments ceased.

That the appellant, who was an employee of the Baltimore & Ohio Railroad Company at a salary in excess of five thousand dollars a year, on several occasions prior to the filing of his bill, invited the appellee to his office in the company's building on the corner of Charles and Baltimore streets, requesting her to come alone, and when she asked permission to bring her sister with her, it was refused. On the first of these occasions he said to her "I want to be a free man now that we are not living together" and that he wished a divorce; that he would never live with her again and charged her with wrongdoing with a neighbor's boy by the name of Morris Hay, who was a frequent visitor at their home and a constant companion of her husband on his launch; that she replied, saying "Jack, you know you don't believe that in your heart," to which he made no reply, and she gave it little thought, and had it not been for the seriousness of the charge she would have treated it as a joke.

That on the next visit to his office, shortly before the date of the filing of his bill, he again spoke of divorce proceedings, and his purpose and object appeared to be to secure a promise that she would not resist him in obtaining it. He said "I don't want you to fight against it," and if she did he would resign his position, leave town and throw her upon her own resources, well knowing her helpless condition; that she at such time was without property or means of support; that at the time of her marriage she held a half interest in a farm in Anne Arundel County, but this was sacrificed in the sale of it at and for the sum of five hundred dollars, which was loaned to him and for which he gave to her his note, which has never been paid.

The petition further alleges that he, in one of these interviews with her, said he could obtain a "divorce in privacy" if his course was followed; that he would, in lieu of alimony, pay her the "lump sum" of three thousand five hundred dollars, and to this end he drew up a paper, the wording of

which she cannot recall, and persuaded her to sign it, she at the time being completely unnerved and being absolutely under his influence and control. He also signed it and, after placing it in an envelope, gave it to Mr. Jones, a clerk, who was called from an adjoining room. Mr. Jones was told to keep the same until it would be called for by the appellant, and something was said by the latter to Mr. Jones about a divorce, but in her nervous condition she did not understand what it was. That she was told in this interview that under no circumstances should she seek the aid or advice of an attorney, and with some feeling he especially forbade her to see Mr. Wheatley, who had previously aided her in obtaining the monthly payments of seventy-five dollars hereinbefore mentioned, and told her that he would select an attorney for her who would properly look after her interest and upon whom she could rely and would see that justice was done her. At this stage of the interview the appellant, sitting at his desk in his office, wrote a letter which he gave to Mr. Bowers, who had been called from an adjoining room, and directed Bowers to typewrite it and return it to him; this he did and the appellant persuaded her to sign it. After it was signed she requested that she be permitted to take the letter with her, saying she would mail it, to which he replied, "No, I will mail it myself." That she did not read the letter, it was read to her, or at least a part of it, she was not able to say that the whole of it was read to her; that the person to whom it was addressed was to represent her in the proceedings. That she did not see this letter again until it was produced by William N. McFaul, Esq., the attorney to whom it was addressed, in the office of her attorney, Mr. Broening. Mr. McFaul, whom she had never met, had come to Mr. Broening's office in response to an inquiry from him as to why he had not appeared for and on behalf of the petitioner at the taking of the testimony in the case. Mr. McFaul produced the letter to explain why he had not done so; the reason, as disclosed by the letter, being that he was directed to "file an answer, as he had done, and nothing more." The fact that

Mr. McFaul was restricted in the duties that he was to perform was, as she expressed it in her petition, news to her.

The petition further alleges that she was never called upon as a witness, nor was she present at the taking of any of the testimony, and "her absolute ignorance of the law made her an easy dupe of the nefarious scheme of her husband. That had she known that the price of the severance of the marital ties * * * was the bartering away of her virtue she certainly would have been present, in person or by counsel, to protect herself from the stigma heaped upon her and to which, as the proceedings now stand, she seemingly was a willing party."

The petition further alleges that in March, after the passage of the decree, the petitioner, in response to a 'phone call from the appellant, went to his office, and on which occasion Mr. Jones, the party in whose custody the aforesaid paper signed by both the appellant and appellee had been entrusted and by which he was to pay the petitioner, in lieu of alimony, thirty-five hundred dollars, was requested to produce such paper, and when it was delivered to the appellant he placed it in a drawer of his desk and then turned to the petitioner and said, "I am not going to give you any money, I have now got my divorce." She then left the office and, after conferring with friends, employed her present attorney, Henry J. Broening, Esq., who, upon examination of the divorce proceedings, discovered from them and disclosed to her that the ground upon which the divorce had been granted was that of adultery, which disclosure, as it is alleged, was a surprise to the petitioner.

The grounds of the demurrer, as disclosed by the record, are: 1. A want of jurisdiction in the Court to grant the relief asked for in the petition; 2. That the petition alleges no facts from which surprise or mistake may be inferred as a result of the passage of the decree; 3. That the facts alleged by the petition are not such as to satisfy the Court, in the exercise of a sound discretion, that the enrolled decree should be annulled and set aside; 4. Laches on the part of the defendant.

In the recent case of *Whitlock Cordage Co.* v. *Hine et al., ante,* page 96, in which the opinion was delivered by CHIEF JUSTICE BOYD, this Court went very fully into the law as it exists in this State in relation to the rescission or annullment of enrolled orders or decrees, and when the proceedings in such cases should be by bill of review or original bill for fraud and when by petition, and, therefore, we do not feel called upon at this time to do more than refer generally to such opinion and the authorities therein cited. *Oliver* v. *Palmer,* 11 G. & J. 136; *Herbert* v. *Rowles,* 30 Md. 271; *First National Bank* v. *Eccleston,* 48 Md. 145; *Gechter* v. *Gechter,* 51 Md. 187; *Patterson* v. *Preston,* 51 Md. 190; *Straus* v. *Rost,* 67 Md. 465; *Mallery* v. *Quinn,* 88 Md. 38; *Primrose* v. *Wright,* 102 Md. 105; *Royal Arcanum* v. *Nicholson,* 104 Md. 472; *Foxwell* v. *Foxwell,* 118 Md. 471; *Holloway* v. *Safe Deposit and Trust Co.,* 124 Md. 539.

The general rule undoubtedly is that a decree or decretal order, after enrolment, can be revised or annulled only by a bill of review or original bill and not by a petition, but there are exceptions to the rule, equally well established as the rule itself; which are generally classified as follows: 1. In cases not heard upon the merits; 2. Where the circumstances are such as to satisfy the Court that the decree should be set aside, and 3. Where the decree was entered by mistake or surprise.

The law being now so well settled, we have only to determine whether to the facts and circumstances of each case the general rule applies, or whether the case falls within one or more of the three exceptions to such rule. If in this case it should be found that the facts and circumstances as disclosed by the petition are not such as to take the case out of the general rule, then, of course, the Court below was in error in overruling the demurrer; but if it should be found from the facts and circumstances disclosed by the petition that the case falls within one or more of the exceptions to the rule, the Court below was right in its ruling upon the demurrer.

It is disclosed by the petition that the bill of the appellant asking for a divorce from the petitioner upon the ground of adultery, was answered by her through counsel, and thereafter testimony was taken on behalf of the complainant to sustain the allegations of his bill. The petition alleges, however, that as a matter of fact she had no knowledge that the charge of adultery was to be made against her, or that it had been made until after the passage of the decree divorcing her from her husband, at which time she was not only surprised, but naturally indignant, and was anxious that an opportunity be afforded her to defend her character against such charge, and we may infer from the facts disclosed by the petition that the answer admitted the truth of the charge. The appellee, of course, as disclosed by the petition, knew that a proceeding was to be or had been instituted by the appellant for the purpose of obtaining a divorce from her, and the attorney selected by the husband was authorized by her to appear for her in such proceedings, but from the allegations of the petition she had no knowledge of the grave and serious charge that was alleged against her as a ground of divorce, nor had she, with her alleged "absolute ignorance of the law" applicable to such proceedings and of the grounds upon which divorces may be obtained, as disclosed by the petition, any sufficient reason to think that such charge against her chastity would be made the basis or ground of the divorce. She had been asked not to resist the divorce, but to consent to its passage, and had been told that if she did not consent to such divorce he would resign his position with the railroad company and leave, throwing her upon her own resources. It was under these facts and circumstances that the attorney selected by her husband was authorized, by the letter written and mailed by himself, but signed by her without knowing the full meaning and purport thereof, to appear in the proceedings as her counsel. He was to make no defense to the allegations of the bill, but was simply to admit its allegations and consent to the passage of the

decree as prayed. At such time the bill, if prepared, was not filed and its contents were not known to the appellee, and especially the charge upon which the divorce was granted, and, as the petition alleges, she never learned of such charge until after the decree was passed.

In our judgment, this case, upon these facts considered with other important facts alleged in the petition, which we deem unnecessary to discuss, clearly falls within the .exceptions to the rule, at least within the exception that the decree was entered under such circumstances as to satisfy the Court, in the exercise of a sound, discretion, that the enrolment ought to be discharged and the decree set aside.

And as to the question of laches, this Court in *National Bank* v. *Eccleston, supra,* said: "The power to open the enrolment is a discretionary power to be exercised or not *according to the circumstances of the case* as being applicable, as well to the time when the petition is to be filed as in other respects." The record discloses that the decree was passed on March 10th and the petition asking that it be annulled was filed on July 28th following. It is not shown that after the passage of the decree and before the filing of the petition the status or position of the appellant, as a result or in consequence, of the decree, was in anywise changed, it remained the same, and in our opinion, the facts and circumstances of the case are not such as to justify us in holding that this lapse of time is a bar to the relief sought by the petitioner.

Therefore, from what we have said, the Court below, in our opinion, committed no error in overruling the demurrer to the petition of the appellee. The order overruling the demurrer will be affirmed.

> *Order affirmed, with costs in this Court to the appellee, and the case remanded.*