FISHER, Administratrix d. b. n. et al. *v.* DEMARR

[No. 37, September Term, 1961.]

510

*Decided October 19, 1961.*

*Motion for clarification of opinion filed November 6, 1961, granted November 17, 1961, and opinion modified.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*LeRoy Pumphrey* and *W. Gwynn Gardiner,* with whom was *South Trimble, Jr.,* on the brief, for the appellants.

*John W. Mitchell* and *George T. Burroughs,* with whom were *Mitchell & Clagett* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

In 1947 Alexander Middleton married Mary Richardson, who had shortly before divorced her first husband in the Circuit Court for Charles County. After Middleton's death intestate in 1960, his brothers and sisters, who would inherit all his estate if he died unmarried, filed a bill in the Circuit Court for Prince George's County by which they—and one of them in her capacity as administratrix d. b. n.—sought to disinherit the wife by establishing the invalidity of the marriage. Their claim was that the divorce decree was void for lack of jurisdiction in the Charles County court, in that both husband and wife were residents of Prince George's County and not of Charles County, and because of fraud in the procurement of the decree in that the wife testified falsely she had been chaste and faithful, whereas in truth she had led a dissolute life and been unfaithful.

Judges Powers and Bowie rejected the contentions of the brothers and sisters. The appeal is from the dismissal of their bill, after the sustaining of the widow's demurrer.

The specifics of the bill in the present case were that the defendant, then Mary Richardson, filed suit for divorce in the Circuit Court for Charles County against her husband, Norman Richardson, in May 1947, and in the following August was granted an absolute divorce; that in September 1947 Mary Richardson married Alexander Middleton, the brother of the complainants, and lived with him on his farm in Prince George's County until his death in 1960; that in 1959 Middleton sold all the farm, except the dwelling, for $141,890.70, of which $24,122.00 was in cash, with the balance of $117,768.70 secured by a mortgage payable to husband and wife, and that the cash was deposited in a bank in joint names; that the

widow had been named administratrix of the estate by the Orphans' Court for Prince George's County and then had been removed by the said court on petition of the complainants, one of whom, a sister, had been appointed administratrix d. b. n.; and that the widow had in her hands the proceeds of sale of certain corn, tobacco, cattle, farm implements, and other assets "that rightly belong to the estate."

The prayers for relief were that the divorce decree and the subsequent Richardson-Middleton marriage be declared void, that the mortgage securing part of the purchase price of the farm be declared an asset of Middleton's estate, that the widow be declared ineligible to inherit any part of his estate and that she be required to surrender all assets of the estate and to suffer judgment for any loss she has occasioned the estate by selling its assets below their market values.

Filed with the bill of complaint as an exhibit was a certified transcript of the divorce proceedings. The bill alleged that the wife had lived in Charles County with her parents for more than two years prior to the filing of the bill and that there had been a deliberate, final and uninterrupted abandonment by the husband for more than eighteen months and that the husband was a resident of Prince George's County. The husband appeared by counsel and in his answer admitted the allegations of the wife as to her residence and his. His counsel acknowledged receipt of notice of the taking of testimony and waived the husband's right to produce witnesses and to cross-examine witnesses of the wife and agreed to a provision in the decree calling for the payment of $5.00 a week for the support of the infant child of the couple.

The wife testified as to her residence with her parents in Charles County from the time her husband entered the service until the filing of the bill, more than two years, that her husband had refused to live with her when he came back from the war and that she had tried to be a true and faithful wife and do what she could to make a happy home. Her mother and another witness testified that she had made her home with her father and her mother in Charles County continuously since her husband entered the service, and that she was as good to her husband as could be and "had given him all the chance she can give him."

The parties to the case at bar proceeded below and have gone forward here on two assumptions, which we think justified. The first is that the assault of the appellants on the divorce decree is a collateral one, and the second is that if the appellants are to prevail on their first contention—which is that the divorce decree was void because neither party was a resident of Charles County—the words of the applicable statute, Code (1957), Art. 16, Sec. 22, that any person desiring a divorce "shall file his or her bill in the Court either where the party plaintiff or the defendant resides," impose a jurisdictional requirement.

The Courts do not always agree on when an attack is collateral and when it is direct. Some Courts regard an attack as direct only if it is made in the same proceeding in which the judgment attacked was rendered. This Court has given some indication of its belief that this is a correct rule. *Peters v. League,* 13 Md. 58; *Thomas v. Hardisty,* 217 Md. 523. *Cf. Master v. Master,* 223 Md. 618; *Hinden v. Hinden,* 184 Md. 575; *Croyle v. Croyle,* 184 Md. 126. *Restatement, Judgments,* Sec. 11, says a direct attack is not only the taking of proceedings in the action in which the judgment was rendered either in the trial or the appellate court but includes the taking of independent proceedings in equity to prevent the enforcement of the judgment, and continues: "Where a judgment is attacked in other ways than by proceedings in the original action to have it vacated or reversed or modified or by a proceeding in equity to prevent its enforcement, the attack is a 'collateral attack.' Where in a subsequent judicial proceeding the judgment is relied upon as a cause of action or defense by one party to the proceeding and the other party sets up the invalidity of the judgment, he is collaterally attacking the judgment."

If the subsequent action has an independent purpose or contemplates other relief and result than the overturning of the judgment, then it is generally said to be collateral even though the overturning may be necessary to its success. 1 *Freeman, Judgments* (5th Ed.), Sec. 307; 31 Am. Jur. "Judgments" Sec. 852, pp. 769-70; 49 C. J. S. "Judgments" Sec. 408; Note, "Development in the Law—*Res Judicata,*" 65

Harv. L. Rev. 818, 850. We think the assault of the brothers and sisters of Middleton on the divorce decree is collateral.

It is established that a judgment or decree of a court without jurisdiction is void and may be attacked directly by a party or a privy, if he is not estopped to do so, and collaterally by a stranger whose interests or status would be adversely affected if it were valid, and that a judgment or decree which is merely erroneous or voidable is not, with relatively rare exceptions, subject to collateral attack. *State v. Ambrose,* 191 Md. 353, 369 (citing among others the case of *Pennoyer v. Neff,* 95 U. S. 714) ; *Medical Examiners v. Steward,* 207 Md. 108; *Thomas v. Hardisty,* 217 Md. 523, 536 (in which it was assumed the attack was collateral) ; *Spencer v. Franks,* 173 Md. 73, 80; *Old Colony Trust Co. v. Porter,* 88 N. E. 2d 135 (Mass.) ; *Bloom v. Bloom,* 150 N. E. 2d 24 (Mass.) ; *Carpenter v. Carpenter,* 93 S. E. 2d 617, 625 (N. C.) ; *Shammas* v. *Shammas,* 88 A. 2d 204 (N. J.) ; *Restatement, Judgments,* Sec. 11 and comments ; 49 C. J. S. "Judgments" Sec. 401 ; Note, 65 Harv. L. Rev. 818, 851.

The attack on the jurisdiction of Charles County must fail. We read the words of Sec. 22 of Art. 16 as to the county in which a divorce action should be filed as directed to venue and not jurisdiction.

The Courts of Maryland did not inherit from the Ecclesiastical Courts the inherent jurisdiction to grant absolute divorces. *Emerson v. Emerson,* 120 Md. 584. Their right and power to do so was bestowed upon them by the Legislature.

Section 22 of Article 16 of the Code, first enacted in 1841, provides that "the courts of equity of this State shall have jurisdiction of all actions for divorce * * * and any person desiring a divorce * * * shall file his or her bill in the Court either where the party plaintiff or the defendant resides * * *." Clearly the first clause confers jurisdiction in the fundamental sense upon all the courts of equity in Maryland. The directions of the second clause can be read as dealing either with venue or with jurisdiction. Several States, whose decisions are relied on by the appellant, have held similar provisions to be jurisdictional. The great weight of authority is that statutes specifying the county in which bills for divorce should

be filed relate to venue, and a bill brought in another county may be entertained if jurisdictional requirements as to residence within the State are met and the defendant waives the privilege conferred by the statute to have the case tried and decided in the specified county. The cases are collected in 2 *Nelson, Divorce and Annulment,* Sec. 21.31, pp. 677-9. See also 17 Am. Jur. "Divorce and Separation" Sec. 302; 27A C. J. S. "Divorce" Sec. 83.

The provisions of Code (1957), Art. 75, Sec. 75, as to the place of bringing law and equity suits generally—which are similar in form to those of Sec. 22 of Art. 16 and would seem in form to be no less mandatory and inflexible—have been held to relate to venue and to have been waivable by a defendant. *Ireton v. Baltimore,* 61 Md. 432. Cf. *Howell v. Bethlehem-Sparrows Pt. Shipyard,* 190 Md. 704 (venue held to have been waived in Workmen's Compensation Appeal). We see no sound reason why Sec. 22 of Art. 16 should not receive a similar construction and, indeed, it appears that it has.

The lawyers and judges of the State—including those of this Court—seem to have considered that if the requirements as to residence within the State are met, the place in the State where the action is filed is a matter of venue. *Myerberg, The Practical Aspects of Divorce Practice,* pp. 27-30, states that the requirements of Sec. 22 of Art. 16 as to the place of suit relate to venue, not jurisdiction. In 1950 the Committee on Divorce Procedure of the Maryland State Bar Association, headed by the late Judge Moser and on which served the late Judge Mish, reported to the annual meeting of the Association in Atlantic City that in the course of its work it had communicated with all the judges of the State "seeking suggestions concerning improvements in the matter of divorce and divorce procedure in Maryland," and had held a meeting with Judge Gontrum of Baltimore County and the standing examiners, masters and clerks of the Circuit Court and Circuit Court No. 2 of the Supreme Bench of Baltimore, and had conferred with many members of the bar. The committee recommended among other things "that legislation be enacted providing that a bill of complaint in a divorce case *must be*

*filed* in the County or City where the plaintiff or defendant resides." (Emphasis added.) Without discussion the report was referred to the Executive Committee "for such action as that body may think necessary or may deem wise to take." 55 *Transactions of the Maryland State Bar Association* (1950), pp. 197-201.

Not only has the suggested legislation never been enacted but the Rules Committee recommended, and in 1958 this Court promulgated, Maryland Rule 1190, entitled "Divorce, Annulment, and Alimony—Equity." Paragraph a is headed *"Venue—General."* Part 1 thereunder is headed "Divorce" and the rule reads: "A bill of divorce shall be filed in a county where the plaintiff resides or where the defendant resides, is regularly employed or has a place of business.

Thus the rule adds to the places specified in Sec. 22 of Art. 16 the county wherein a defendant is regularly employed or has a place of business. Maryland Rule 1 i says: "These rules shall not be construed to extend, limit or affect the jurisdiction of any court." The Rules Committee and this Court have not embodied in a rule any matter which they thought could reasonably be considered substantive rather than procedural, and it would appear that Rule 1190 a (1) would not have been recommended and adopted if the Committee or the Court had thought it extended the jurisdiction of courts of equity in divorce cases.

In 1959 Judge Niles, largely on the strength of Rule 1190, held in the Circuit Court No. 2 of Baltimore, in *Shaw v. Shaw,* Daily Record, September 9, 1959, that where the parties to a divorce case resided in Baltimore County and the bill was filed in Baltimore City and the defendant was summoned and failed to appear, the Baltimore court had jurisdiction and, venue having been waived, could entertain and decide the case.

In *Harrison v. Harrison,* 117 Md. 607, this Court implied that the directions of what is now Sec. 22 of Art. 16 were ones of venue (although using the word jurisdiction) which could be waived, but the point was not decided since the question of residence was disposed of on the merits adversely to the defendant.

Assuming that the wife's residence was Prince George's County as the demurrer requires, there can be no doubt the husband waived his privilege to have the case tried in that county when he entered his appearance and acquiesced in having the court consider and determine the case. Md. Rule 323. The Charles County court had jurisdiction of the subject matter under the express terms of Sec. 22 of Art. 16 that the courts of equity of the State have jurisdiction to grant divorces and the admitted fact that both parties had been residents of Maryland for the requisite length of time. Both parties were properly before the court and its decree was not void.

Appellants' second attack on the divorce decree for fraud in the allegedly perjured testimony of the wife that she had been chaste and faithful must fail, for want of interest in the appellants at the time of the divorce case.

The cases hold that a party or a privy may not attack a decree for fraud which does not deprive the court of jurisdiction —for intrinsic, as opposed to extrinsic, fraud as it is sometimes expressed. Perjury is held to be fraud intrinsic and within the matters and issues tried and determined and not extrinsic and collateral fraud, as it would have to be to be a basis for relief. In *Maryland Steel Co. v. Marney,* 91 Md. 360, a bill to enjoin collection of a judgment alleged the witnesses for the plaintiff in the suit at law perjured themselves and the verdict was obtained by their false testimony, which was procured by bribery. This Court adopted the views of the Supreme Court in *United States v. Throckmorton,* 98 U. S. 61, 66, 25 L. Ed. 93, in sustaining a demurrer to the bill. In the *Throckmorton* case the Supreme Court distinguished cases where, because of extrinsic fraud, practiced directly upon the party seeking relief, he had been prevented from presenting all of his case, and then said: "On the other hand, the doctrine is equally well settled that the Court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed." See also *Tabeling v. Tabeling,* 157 Md. 429 (applying the *Marney* rationale to a bill to set aside a divorce decree for perjured testimony); 1 *Freeman, Judgments* (5th Ed.),

Sec. 331; *Restatement, Judgments,* Sec. 126 (2) (b) ;[1] Note, 65 Harv. L. Rev. 818, 851.

A judgment or decree which determines status is conclusive upon all persons as to the existence of the status, *Restatement, Judgments,* Sec. 74, and the rule that parties and their privies can not make a collateral attack on a divorce decree on the ground of fraud not going to the jurisdiction, includes strangers to the original case unless the fraud adversely affected some interest or status which existed at the time of the entry of the decree assailed.[2]   See *Shammas v. Shammas,* 88 A. 2d 204, 209 (N. J.) and *Carpenter v. Carpenter,* 93 S. E. 2d 617, 626 (N. C.), both cited above; *Anonymous v. Anonymous,* 85 A. 2d 706 (Super. Ct. Del.) (applying Texas law), aff'd 90 A. 2d 468 (Del.), *cert. den.* 344 U. S. 836, 97 L. Ed. 651; *Davis v. Mitchell,* 178 S. W. 2d 889, 901 (Tenn.) ; *Farr v. Farr,* 181 N. W. 268 (Iowa) ; *Reger v. Reger,* 293 S. W. 414 (Mo.) ; *Evans v. Asphalt Road and Materials Co.,* 72 S. E. 2d 321 (Va.) (applying Nevada law) ; *Kirby v. Kent,* 160 So. 569 (Miss.) ; *Sykes v. Sykes,* 139 So. 853 (Miss.) ; 1 *Freeman, Judgments* (5th Ed.), Secs. 318-9; 49 C. J. S. "Judgments" Sec. 414.   See also *De Bobula v. Goss,* 193 F.

---

1. *Restatement, Judgments,* Sec. 126 (2) (b) and comment c thereunder have been revised—see 1948 Supplement, p. 357—to eliminate the statements that relief will not be granted against an erroneous and inequitable judgment on the sole ground that the judgment was obtained by "a conspiracy between the successful party and the witnesses." This was done on the strength of Hazel Atlas Glass Co. v. Hartford Empire Co., 322 U. S. 238, 88 L. Ed. 1250, and Sutter v. Easterly, 189 S. W. 2d 284 (Mo.), in both of which a party obtained relief because a lawyer had engaged in a conspiracy to commit a fraud upon the court (compounded in the *Hazel* case by the fact the result was a fraud on the United States Patent Office).

2. Where the decree is void, there are cases holding that it is not necessary that the interests of the stranger have existed at the time of its rendering and that an interest adversely affected when the challenge is made is enough.   See Old Colony Trust Co. v. Porter, 88 N. E. 2d 135 (Mass.); Jones v. Goolsby, 68 So. 2d 89 (Miss.). There are a number of cases imposing the requirement of a pre-existing interest in a stranger where the decree is void, some of which are collected in an annotation in 12 A. L. R. 2d 717.

2d 35 (D. C. Cir.) ; *Turner v. Alton Banking & Trust Co.,* 166 F. 2d 305, 308-9 (8th Cir.) (applying Illinois law).

At the time of the divorce in 1947 no interest or status of the appellants was affected by it and they have no standing now to attack the decree for the intrinsic fraud they claim.

Appellants' final contention is that the equity court should have compelled the widow to turn over money belonging to the estate and to account for losses she had occasioned the estate by selling assets belonging to it at a loss. The real aim of appellants was to establish that the defendant was not their brother's wife and so to deprive her of all inheritance from him either as tenant by the entirety or joint tenant or as his widow. Since they were properly put out of court on their main effort and the appellee is entitled to take a widow's share of the estate subject to administration (as distinguished from the assets held as tenant by the entirety or as joint tenant), we see no error in the lower court refusing to undertake a supervision of a partial administration of Alexander Middleton's estate, a task the law assigns to the Orphans' Courts.

There were no allegations in the bill that the Orphans' Court in which the administration is proceeding could not adequately afford the relief appellants claim, if they are entitled to it. Code (1957), Art. 93, Sec. 277, empowers the Orphans' Courts to order a successor administrator to put in suit the bond of the administrator whose letters have been revoked. There is no allegation in the bill that no bond was filed or that a bond exists but is inadequate. If the Orphans' Court has power to do what should be done, as it appears to have here, equity need not take jurisdiction. *Anderson v. Curran,* 155 Md. 538. Finally, it has been held that Sec. 277 of Art. 93 requires an order of the Orphans' Court authorizing an administrator d. b. n. to sue the removed administrator before he is entitled to do so. *State, Use of Stockbridge v. Smith,* 64 Md. 101; *State, Use of Dittman v. Robinson,* 57 Md. 486. There is no allegation by appellants that any such order has been passed.

There was no error in dismissing the bill.

*Decree affirmed, with costs.*