# SCHWARTZ ET AL. *v.* MERCHANTS MORTGAGE COMPANY ET AL.

[No. 274, September Term, 1973.]

*Decided July 29, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Mark P. Friedlander*, with whom was *William M. Canby* on the brief, for appellants.

*Lawrence F. Rodowsky*, with whom were *Frank, Bernstein, Conaway & Goldman* on the brief, for Merchants Mortgage Company et al., part of appellees. *David Freishtat* for Ralph Lubow and Pacy Oletsky, part of appellees. Submitted on brief by *Leonard S. Jacobson* for Eugene J. Silverman, another appellee. Submitted on brief by *J. Elmer Weisheit, Jr.*, and *Barry M. Nudelman* for J. Elmer Weisheit, Jr., other appellee.

DIGGES, J., delivered the opinion of the Court.

On May 13, 1968, the Circuit Court for Prince George's County (Bowie, J.), concluded that the charges made by Mr. and Mrs. Reuben Schwartz (appellants here) of fraud, collusion, misrepresentation, nondisclosure, conspiracy, and other wrongdoing allegedly committed against them by a number of individual and corporate defendants (appellees here)[1] were unsupported by the evidence. After

---

1. The appellees are Suitland Development Corp., R & S Development Corp., Warbling Meadow, Inc., Beltway-Penn Construction Co., Inc., Merchants Mortgage Co., Inc., Charles C. Hoffberger, Charles H. Hoffberger, Leroy E. Hoffberger, Jerold C. Hoffberger, Morton J. Hollander, Morton Silberman, Ralph Lubow, Sol M. Bank, J. Elmer Weisheit, Jr., Pacy Oletsky, and Eugene J. Silverman. The case reaches us on this occasion pursuant to a writ of certiorari to the Court of Special Appeals which was issued on our own motion before that court had heard the appeal. Maryland Code 1974, § 12-201 of the Courts and Judicial Proceedings Article.

incorporating these determinations into its final decree, that court dismissed the appellants' bill of complaint to set aside certain mortgages and to obtain other associated relief. In *Suitland Dev. v. Merchants Mort.*, 254 Md. 43, 254 A. 2d 359 (1969), we dismissed their appeal and, in accordance with Maryland Rule 671 a, that decree became enrolled.[2] After four years had passed, by an original bill in equity alleging fraud filed in the Circuit Court for Prince George's County, the appellants now attempt to vitiate the 1968 decree. In reply to this bill, the respondents filed a demurrer which was sustained by Judge James F. Couch without leave to amend. Here, on appeal, the appellants allege, just as they did in their complaint, that the 1968 decree should be set aside since it was tainted by a conspiracy, entered into by the appellees prior to the trial and executed by them during the course of the proceedings through the commission of perjury and the suppression of material evidence, which brought about an erroneous result. The Schwartzes first discovered this alleged plot, they say, when their attention was directed to a dispute which arose among some of the appellees, and which has developed into a suit now being prosecuted in Baltimore City. The appellants have consistently claimed that the result of the original suit was inequitable and unjustified as it was based on erroneous findings by the court which were the consequence of this cabal.[3] However, despite the appeal to our sensibilities which this complaint, if true, invokes, we shall affirm the action of the chancellor for substantially the same reasons as those given by him in sustaining the appellees' demurrer.

As we have said so often that extensive citations are unnecessary, when we consider the propriety of an order sustaining a demurrer to a bill of complaint without leave to

2. Employing the principles of collateral estoppel, Merchants Mortgage Co. then utilized this Maryland decree to obtain a judgment against the Schwartzes for $615,000 in the United States District Court for the District of Columbia. The present suit is being prosecuted as a necessary first step in attacking this judgment of the United States District Court.

3. Whether these allegations were presented with sufficient specificity in petitioners' complaint is an issue respondents raise here. Because we decide the case on a different ground which is dispositive of this litigation, we do not reach this proposition.

amend, we are required to assume, for the purposes of the ruling, the truth of all material and relevant facts that are well pleaded as well as all inferences which can be reasonably drawn from those well pleaded facts. *Desser v. Woods*, 266 Md. 696, 296 A. 2d 586 (1972). Applying this standard to the Schwartzes' complaint, we are convinced that the demurrer was properly sustained since they have not set forth that type of intentionally deceptive artifice which this Court has consistently required in order to authorize the reopening of an enrolled decree. We base this conclusion on a firm foundation of Maryland cases which go back to at least the turn of the century. *E.g., Fisher, Adm'x v. DeMarr*, 226 Md. 509, 174 A. 2d 345 (1961); *Bachrach v. United Cooperative*, 181 Md. 315, 29 A. 2d 822 (1943); *Tabeling v. Tabeling*, 157 Md. 429, 146 A. 389 (1929); *Wilmer v. Placide*, 144 Md. 372, 125 A. 60 (1924); *Pressler v. Pressler*, 134 Md. 243, 106 A. 686 (1919); *Maryland Steel Co. v. Marney*, 91 Md. 360, 46 A. 1077 (1900). At that time, we unequivocally and specifically adopted as the law of this State in *Maryland Steel Co. v. Marney, supra,* not only the holding, but also the reasoning and the language of both *United States v. Throckmorton*, 98 U. S. 61, 25 L. Ed. 93 (1878) and *Pico v. Cohn*, 91 Cal. 129 (1891), and thereby settled beyond question that an enrolled decree will not be vacated even though obtained by the use of forged documents, perjured testimony, or any other frauds which are *"intrinsic"* to the trial of the case itself. Underlying this long settled rule is the principle that, once parties have had the opportunity to present before a court a matter for investigation and determination, and once the decision has been rendered and the litigants, if they so choose, have exhausted every means of reviewing it, the public policy of this State demands that there be an end to that litigation. Or, as the United States Supreme Court opined in *Throckmorton, supra,* "the mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses ... was in issue ... would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases." *Id.* at 68. This policy favoring finality and

conclusiveness can be outweighed only by a showing "that the jurisdiction of the court has been imposed upon, or that the prevailing party, by some extrinsic or collateral fraud, has prevented a fair submission of the controversy." *Pico v. Cohn, supra* 91 Cal. at 133. Examples of what would be considered *"extrinsic"* fraud were provided in *Throckmorton:*

> "Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side, — these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing." 98 U. S. at 95.

This "intrinsic-extrinsic" distinction, which is delineated for this State in *Maryland Steel Co. v. Marney, supra,* has been universally followed by the large number of Maryland cases which have considered whether an enrolled decree or judgment should be reopened when fraud is alleged. *Fisher, Adm'x v. DeMarr; Bachrach v. United Cooperative; Tabeling v. Tabeling; Wilmer v. Placide; Pressler v. Pressler,* all *supra.* These cases establish that fraud is extrinsic when it actually prevents an adversarial trial, but is intrinsic when it is employed during the course of the hearing which provides the forum for the truth to appear, albeit that truth was distorted by the complained of fraud. This is necessarily so, as the very object of the trial is to assess the truth or falsity of the often conflicting testimony and documents presented. And, the fact that the fraud is the product of a

conspiracy does not alter its nature — that is whether it is intrinsic or extrinsic to the trial. This was specifically decided by this Court in *Tabeling v. Tabeling, supra* at 434, a case involving a conspiracy to commit perjury very similar to that encompassed here, where it was stated:

> "The charge that there was a conspiracy between the appellant's witnesses to 'frame' the appellee, and that the decree was founded on their perjured testimony, likewise goes to the merits of the case, and [, being intrinsic to that trial,] is not recognized as a sound reason for setting aside a decree after it has been enrolled . . . ."

The Schwartzes argue, in the alternative, that even if we conclude that a conspiracy to commit perjury which comes to fruition in the trial of the case normally constitutes intrinsic fraud, nevertheless, such a holding is inapplicable here because the conspiracy which infected the earlier decree was entered into prior to the hearing, and the perjury committed pursuant to that intrigue was so pervasive and extensive that it effectively deprived the circuit court of jurisdiction, and, therefore, the fraud committed was extrinsic to the trial. Additionally, they urge that if we reject this last contention as not being in accord with the law of this State, we should here abolish the distinction between intrinsic and extrinsic fraud and thereby permit, upon proper proof, the reopening of the 1968 decree. For the former proposition, appellants cite the decision of the Supreme Court in *Marshall v. Holmes*, 141 U. S. 589, 12 S. Ct. 62, 35 L. Ed. 870 (1891) as creating an exception, which they urge us to follow, to the *Throckmorton* rule. For the latter, they direct this Court's attention to the decision of the Supreme Court of New Jersey in *Shammas v. Shammas*, 9 N. J. 321, 88 A. 2d 204 (1952), as well as Federal Rule of Procedure 60 (b) both of which appellants contend abolish the "intrinsic-extrinsic" distinction.[4] Our response to these

---

4. The decision in the *Shammas* case relies principally upon a rule of procedure in force within that jurisdiction. We need not here decide whether the New Jersey or federal rules, if applied, would aid appellants or

contentions, however, is quite simple. The law of Maryland is too well settled for us to overrule it in a decision such as this. Whether *Marshall* modified *Throckmorton* is irrelevant here, since even if it did, all of the decisions of this Court beginning with *Maryland Steel Co. v. Marney, supra* (decided after *Marshall*) in 1900, through *Fisher, Adm'x v. DeMarr, supra,* in 1961, have consistently adopted *Throckmorton* as correctly expressing the law of this State with no mention of *Marshall* at all. Surely, our predecessors were aware of that case but chose to ignore it. This reasoning is equally applicable to the argument in favor of abolishing the distinction between intrinsic and extrinsic fraud. At least seventy-four years of case law cannot be swept aside with such a broad and bold stroke. If a change is to be made in this aspect of Maryland procedure, it should be accomplished through the rule making power of this Court. Accordingly, we shall affirm the decree entered by Judge Couch.

> *Decree affirmed.*
>
> *Costs to be paid by the appellants.*

---

if they are as expansive as claimed. Federal Rule 60 (b), which is substantially the same as the New Jersey Rule, in pertinent part reads:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; .... The motion shall be made within a reasonable time, and for [reason] ... (3) not more than one year after the judgment, order or proceeding was entered or taken."