## CAMILLA C. GREEN *v*. MILDRED H. GREEN

[No. 437, September Term, 1976.]

*Decided December 30, 1976.*

The cause was argued before MENCHINE, MOORE and LOWE, JJ.

*David J. McDonnell* for appellant.

*Bernard J. Medairy, Jr.*, for appellee.

LOWE, J., delivered the opinion of the Court.

Misfortune has extracted substantial recompense from Samuel A. Green, Jr., see *Green v. State*, 25 Md. App. 679; *Green v. Lombard*, 28 Md. App. 1; *Att'y Grievance Comm'n v. Green*, 278 Md. 412 (1976); but the anguish of his ordeals was not suffered by him alone. It is a natural phenomenon of our species that our mates and mothers share our burdens.

Sam Green's mother and appellee here, Mildred H. Green, exhibited material manifestations of maternal succor by her willingness to lend him money on three occasions. The loans were evidenced by a confessed judgment note for $10,000, dated June 21, 1965; one for $8,000, dated March 6, 1973; and one for $5,000, dated November 10, 1974. His wife and appellant here, Camilla C. Green, obligated herself jointly with her husband to pay these notes. The $10,000 note was a demand note, the other two were to mature three years from their dates.

But the misfortune which caused anguish to be suffered by others than its primary target created in time another form of mischief by "making foes where friends once were".[1] The record does not reveal the form of the misfortune which caused the subsequent disharmony, but on August 7, 1975, Mildred caused judgment to be entered by confession against both Sam and Camilla on all three notes, notwithstanding that the two more recently executed notes had not yet matured.[2]

---

1. An English proverb derived from a statement in Chaucer's *Monk's Tale* which reads:
    "For what man hath friendes through Fortune Mishap wol maken hem enemys I gesse; . . ."
2. Samuel A. Green, Jr. is not a party to this appeal.

On September 11, 1975 Camilla Green filed motions to vacate the judgments pursuant to Md. Rule 645 c, but she missed that Rule's 30 day deadline by one day and was thus deprived of its relatively light burden of showing a "meritorious defense" in order to vacate judgment. Instead, she was compelled to rely upon Md. Rule 625, which provides a court with revisory power over its judgments on motions filed 30 days from entry only in case of "fraud, mistake or irregularity". The issue was decided upon appellee's motions to strike or not to receive appellant's motions to vacate the judgments.

The state of fortune's mishaps continued to envelop Camilla. Judge Albert P. Close, sitting as the Circuit Court for Baltimore County, decided that there was neither fraud, mistake nor irregularity in the obtention of the judgments and granted appellee's "Motion to Strike or Motion Ne Recipiatur". Perhaps Mrs. Green's fortunes will change for the better hereafter, but not here on appeal, for our review finds that Judge Close was correct.

Camilla protests that she had asserted "fraud" as to the 1965 note for $10,000, when she filed an affidavit that the $10,000 was a gift. The demand note, she contended, was "to evidence not an obligation, but the amount of the gift." But as so clearly pointed out in the excellent opinion by Judge Close, the fraud appellant alleged is "intrinsic", *i.e.*, fraud in the inducement to sign the note, not "extrinsic" fraud, which is that perpetrated in obtaining the judgment. While the fraud alleged may have provided a "meritorious defense" to an action on the note under Md. Rule 645 c, it is not such as would have shown:

> " 'that the jurisdiction of the court has been imposed upon, or that the prevailing party, by some extrinsic or collateral fraud, has prevented a fair submission of the controversy.' " *Schwartz v. Merchants Mort. Co.*, 272 Md. 305, 309.

Explaining that such is the nature of the fraud required to vacate a judgment after it has been enrolled 30 days, the

Court of Appeals in *Schwartz* quoted *United States v. Throckmorton*, 98 U. S. 61, 95, for examples:

" 'Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side — these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing." 272 Md. at 309.

We agree with Judge Close that:

" . . . the [appellant] cannot rightly allege the fraud in question prevented a fair submission of the controversy because the record shows she was properly served with notice of the judgment on August 11, 1975. [Appellant's] failure to plead in a timely fashion prevented any submission of the controversy to the Court, and there is no allegation that the allegedly fraudulent conduct of the [appellee] in any way prevented timely pleading."

It is apparent that appellant did not allege fraud in the obtention of the judgment by confession upon the $10,000 demand note.

Camilla further contends that the judgments on the second and third notes should be vacated because they were entered by mistake or irregularity. Arguing that no cause of action on these notes would arise until default, and that default could not arise until the notes had matured on March 7, 1976 and November 11, 1977, respectively, Camilla

contends that the attorney who confessed the judgments exceeded his authority by doing so. The notes contained a warrant that the makers:

> " . . . do hereby *empower any attorney* of any court of record . . . *to* appear for us and . . . *confess judgment against us as of any term, for the above sum* with costs of suit and attorney's commission of 4% for collection . . . ." (emphasis added).

There is no question that parties to a note may, by agreement, authorize the entry of a judgment by confession before the maturity of the obligation.[3] *Hart v. Hart*, 165 Md. 77; see *Edelen v. First Nat. Bank*, 139 Md. 422, 424. Because here there is no express agreement authorizing confession of judgment before maturity, as there was in *Hart, supra*, the issue is whether the warrant of authority implicitly authorizes confession before maturity.

We have interpretative guidance from the Court of Appeals in *Stankovich v. Lehman*, 230 Md. 426. The note in controversy there appears to have contained language nearly identical to the language at issue here. The Court described the note by saying that:

> "It contained a warrant to confess judgment by *empowering any attorney* of any Court of Record to '*confess judgment against us as of any term for the above sum* with Costs of suit and Attorney's commission of 10% for collection.'" (emphasis added). *Id.* at 429.

Judgment was confessed there after the note matured, and appellant moved that the judgment be vacated. The success of the motion depended upon appellant's ability to assert intrinsic fraud and failure of consideration. Whether these defenses could be asserted depended on whether the

---

3. It is not unreasonable for a lender to desire the security and advantages of obtaining a judgment before maturity of the note. For example, should the lender find, after making the loan, that the debtor has overextended himself, the lender may exercise his option to secure the loan by confessing judgment if he has been given the right to do so in the warrant of authority. *Cf.*, Hart v. Hart, 165 Md. 77, 80-81. That rationale may not be available to effect a premature execution on such judgments, however.

assignees of the note were holders in due course. That, in turn, depended on whether the note was negotiable.

The Court reasoned that the negotiable character of an instrument is not destroyed by a provision authorizing confession of judgment if the instrument is not paid when due. See Comm. L. Art., § 3-112 (1) (d). However, if the authorization permits confession of judgment before maturity, the note is not negotiable, because the power of the holder to mature the note at any time violates the requirement (now found in Md. Code, Comm. L. Art., § 3-104 (1) (c)) that the time of payment must be certain. *Stankovich, supra,* at 429-430. The Court then stated:

> "It would seem logical that if the statute, as it does, preserves negotiability only if the confession of judgment is at or after maturity, the warrant to confess must expressly, or by necessary implication, restrict its exercise to that time if the note is to be negotiable, *and* that *if the warrant is silent as to the time when it can be exercised, the reasonable implication must be that it can be done at any time.*" (emphasis added). *Id.* at 430.

The Court then digressed to respond to an interpretative argument of what meaning should be given the phrase "as of any term". It noted that the phrase can be interpreted in at least three ways. The Pennsylvania view relied upon by appellants Stankovich held that the phrase authorized a confession of judgment "at any term" without restriction as to time. The appellees Lehman argued that the word "term" connotes a single unit of time during which all pleadings and procedural steps causing judgment to be entered may be accomplished contemporaneously. Finally, the Court noted that in Illinois the phrase "as of any term" was held to limit the exercise of the power to times when the Court was in session and not in vacation,[4] an interpretation relied on by

---

4. The Court noted parenthetically that:
   "(The usual rule, at common law, would seem to have been that a judgment by confession, not being an adversary proceeding, could be entered in vacation as well as in term time, 1 *Black on Judgments* (2d Ed.). Sec. 52.)" Stankovich, *supra,* at 431.

appellant before us. But, concluding its learned discussion, the Court of Appeals decided that none of these views were necessary to decide the case it was considering and consequently declined to adopt one of them. Instead, the Court appeared to emphasize the restrictive nature of the language used in describing the amount authorized by the warranty for confession of judgment — "the above sum" — and, following its reasoning that the silence implies authority to confess judgment before maturity, it concluded that the note was not negotiable "[s]ince judgment could have been confessed before maturity". The Court held that:

> "The makers of the note did not limit the authority they gave to confess judgment against them to the maturity of the note, and it could have been done 'for the above sum' in proper exercise of the power at any minute and as of any term after delivery of the note, whether that term occurred before or after maturity of the note." *Id.* at 431-432.

Since that holding was necessary to its decision, we conclude that this statement is the Court of Appeals' expression of law rather than its writer's dicta.[5]

The warrant of authority before us is all but identical to that in *Stankovich*, neither of which contained any limit upon when the authority to confess judgment may be exercised. We are bound by the holding of *Stankovich*, whether interpreted as we have viewed it here, or as described in *von Frank v. Hershey Nat'l Bank*, 269 Md. 138, 145.

*Judgments affirmed.*
*Costs to be paid by appellant.*

---

5. *But see* von Frank v. Hershey Nat'l Bank, 269 Md. 138, 145, which stated the holding of Stankovich to be that " . . . the authorization to confess judgment 'as of any term' permitted entry of judgment at any time prior to the maturity of the note and therefore destroyed negotiability." We do not find that to be the holding of Stankovich; however, if that is a correct interpretation of the Stankovich holding as opposed to our view, the result would be the same and it would also be dispositive of the case at bar.