## KYONG SUN SCHNEIDER *v.* KARL SCHNEIDER

[No. 524, September Term, 1976.]

*Decided March 11, 1977.*

The cause was argued before MOYLAN, MENCHINE and MOORE, JJ.

*Wallace Dann,* with whom were *Bregel & Bregel, Chartered* on the brief, for appellant.

*Mark J. Hardcastle,* with whom were *Thomas G. Gray, Cornelius F. Sybert, Jr.* and *Sybert, Sybert & Nippard* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

Almost six years ago, the parties to this appeal were divorced *a vinculo matrimonii* on grounds of voluntary separation. More than three years after the date of the decree, the appellant-wife filed a motion to set it aside on grounds of fraud. The chancellor (Childs, J.) denied the motion, holding that an attempt to reopen the decree by petition, rather than by original bill, was improper; and finding in effect that the appellant-wife had not made an appropriate showing of fraud. We affirm on the latter ground, although it is our conclusion that appellant's motion, under Maryland Rule 625 a., was proper.

I

Appellant, Kyong Sun Schneider, a citizen of Korea, and appellee, Karl Schneider, a native Marylander, were married in Baltimore City on December 27, 1968, in a church ceremony. Appellant had come to the United States as a "war bride" and had been divorced from her first husband. After she and appellee had been married less than a year, they entered into a separation agreement on September 2, 1969, wherein he agreed to pay her $15,000 in cash in consideration of which she waived alimony. Although the agreement recited that they had mutually agreed to live apart without cohabitation as of the date of the signing of the agreement, the wife did not leave the marital residence for several days. Thereafter she returned to the marital abode from time to time for significant periods of time and the parties engaged in sexual relations on such occasions. Eventually, according to the appellee's testimony, he engaged his former wife as a housekeeper in the matrimonial residence upon payment to her of $100 a week. The appellant contended, on the other hand, that she was not a hired housekeeper and that appellee maintained and supported her as his wife.

Coincident with his termination of this arrangement — whatever it may have been — and on or about September 16, 1974, appellant filed a motion to set aside the final decree of

divorce dated May 19, 1971. The gravamen of the motion was that the testimony on which the decree was granted was false. Included among the appellant's allegations were the following:

"The defendant is a citizen of the Republic of Korea and a permanent resident of the United States. She does not read or write the English language and is unfamiliar with local legal customs and procedures. She was aware that something in the nature of a divorce proceeding was progressing, but she believed her husband who fraudulently told her that the proceeding was not going to forever dissolve the bonds of matrimony between them. Plaintiff further told defendant that he wanted her to continue to live with him and that upon his death she would inherit all of his real and personal property."

Elsewhere in the motion, appellant claimed that there was never any actual separation between the parties and that from May, 1971 until July, 1974, when appellee filed eviction proceedings against her, appellee supported her and held her out as his wife; and that testimony given by appellee and his witness before the Master with respect to their being separated was false. The motion concluded with a prayer that the decree of divorce be set aside "because of a lack of grounds for granting such divorce." The appellee by his answer to the motion specifically denied the wife's allegations and averred that she had accepted the lump sum cash settlement of $15,000 in 1969, and that such continued cohabitation as took place was *subsequent* to the date of the divorce decree.

A hearing on the petition and answer was held before Judge T. Hunt Mayfield in June, 1975 and the matter was taken under advisement. Prior to disposition of the case, Judge Mayfield retired and the parties then elected to submit on the existing record rather than have the cause set in for rehearing.

After consideration of the pleadings and the testimony

taken before Judge Mayfield, the chancellor ruled on the authority of *Gray v. Gray*, 245 Md. 713, 228 A. 2d 441 (1967):

" ... the movant has alleged fraud but has attempted to reopen the decree by *petition* and not by an original bill. The instant petition does not fall within the ambit of either of the two recognized exceptions to the rule allowing an enrolled decree to be attacked by petition."

The chancellor also made the following finding:

"The court finds that the movant had the benefit of both notice of the hearing before Master Cicone and representation by her counsel, Mr. Pusey, at that hearing. Movant had the opportunity to attend the hearing but chose not to attend."

Dismissing the petition, the court also ordered that the transcript be referred to the State's Attorney for Howard County, "for any action he may deem appropriate."

## II

Contrary to the holding of the chancellor, we conclude that there was no procedural defect in the proceedings below. We recognize that the earlier cases and older treatises abound with pronouncements that generally enrolled decrees may be reopened or set aside *only* upon the filing of a bill of review for patent error on the face of the decree or upon the filing of an original bill for fraud. *See, e.g.* E. Miller, *Equity Procedure* § 293-300 (1897); *Pugh v. Waclawski*, 211 Md. 346, 350, 127 A. 2d 376, 379 (1956); *Vierling v. Holt*, 197 Md. 522, 525, 80 A. 2d 24, 26 (1951); *Tabeling v. Tabeling*, 157 Md. 429, 146 A. 389 (1929); *Pressler v. Pressler*, 134 Md. 243, 245, 106 A. 686, 687 (1919); *Whitlock Cordage Co. v. Hine*, 125 Md. 96, 102, 93 A. 431, 433 (1915). *See also Gray v. Gray, supra.*

In *Tabeling, supra*, Judge Sloan cited *Whitlock Cordage Co. v. Hine, supra*, and quoted from the opinion therein by Chief Judge Boyd, who stated for the court:

"It must be confessed that it is not always easy to determine under the authorities when a petition to

rescind an order or set aside a decree, which has become enrolled, should be entertained. *The general rule undoubtedly is that a decree or a decretal order, after enrollment, can be revised or annulled only by a bill of review or original bill, and not by a petition, but there are exceptions to the rule, equally well established as the rule itself, which are generally classified as follows*: (1) In cases not heard upon the merits. (2) Where the circumstances are such as to satisfy the court that the decree should be set aside, and (3) where the decree was entered by mistake or surprise." (Emphasis added.) 157 Md. at 433, 146 A. at 391, *quoting,* 125 Md. at 102, 93 A. at 433.[1]

In the instant case, the chancellor relied upon similar language in a per curiam opinion of the Court of Appeals in *Gray v. Gray, supra,* where a former husband filed a petition to set aside a decree of divorce entered some seven years previously, and quoted the following language from that opinion:

"Rule 671 a provides: 'A final decree, . . . shall be considered as enrolled from and after the expiration of thirty days from date of same.' The court's revisory power over an enrolled decree is limited to cases of 'fraud, mistake, or irregularity.' Rule 625 a. It is settled Maryland law once a decree has been enrolled it may be reopened or set aside *only upon a bill of review for error patent upon the face of the decree, or upon the allegation of newly discovered evidence, or upon the filing of an original bill for fraud.* Here the appellant has alleged fraud but has attempted to reopen the decree by petition and not by an original bill.

1. In the later case of Vierling v. Holt, *supra*, Chief Judge Marbury observed that the earlier cases, "indicate that instead of there being three classes of cases, there are only two, (1) where the decree was entered by mistake or surprise, and (2), where the circumstances are such as to satisfy the court that the decree should be set aside, and that, in each of these two classes of cases, it must also appear that the case has not been heard upon the merits." 197 Md. at 526, 80 A. 2d at 26.

However, there are two recognized exceptions to the above stated rule which allow an enrolled decree to be attacked by petition. The first is where there is a showing that the decree was entered by surprise or mistake; the second is where the circumstances warrant the court to use its sound discretion and set aside the decree; however, these exceptions are only applicable if the case, in which the decree was rendered, was not heard upon its merits. *Pinkston v. Swift*, 231 Md. 346, 351, 190 A. 2d 533, 536 (1963); *Cramer, Trustees v. Wildwood Co.*, 227 Md. 102, 107, 175 A. 2d 750, 753 (1961); *Kennard v. McKamer Realty Co.*, 224 Md. 490, 168 A. 2d 372 (1961).

"At bar the original divorce proceeding was heard upon the merits at which appellant was represented by counsel; thus the two exceptions to the general rule discussed above will not better the appellant's position." [2] (Emphasis added.) 245 Md. at 715-16, 228 A. 2d at 443.

The *Gray* case was decided by the court some ten years *after* the adoption by the court in 1956 of Maryland Rule 625 which became effective January 1, 1957. The rule provides in part:

"a. *Generally*.

For a period of thirty days after the entry of a judgment, or thereafter pursuant to motion filed within such period, the court shall have revisory power and control over such judgment. *After the expiration of such period the court shall have revisory power and control over such judgment, only in case of fraud, mistake or irregularity.*" (Emphasis added.)

---

**2.** The court, at the conclusion of the opinion, also stated, however: "Assuming *arguendo*, that appellant's petition was to be deemed an original bill for fraud, the facts . . . amply show that there was no fraud practiced upon the appellant."

As the Court of Appeals made abundantly clear in *Hughes v. Beltway Homes, Inc.*, 276 Md. 382, 347 A. 2d 837 (1975), there is no distinction to be made between law and equity in the application of Maryland Rule 625 a. and, after the expiration of thirty days from the entry of a judgment, a court has revisory power and control *only* in case of fraud, mistake or irregularity; there being no exception for equity cases not heard upon their merits.[3] The court in *Hughes* did not have occasion to consider the question presented here, *i.e.*, whether the issue of fraud, mistake or irregularity under Rule 625 a. may *procedurally* be raised by motion or whether, under *Gray v. Gray, supra,* and prior cases, a bill of review or an original bill for fraud is the only appropriate procedure.

Upon the basis of our research and consideration, we are acutely aware that this procedural issue has been a "troublesome question," *Whitlock Cordage Co. v. Hine, supra,* 125 Md. at 107, 93 A. at 435, and that reconciliation of the cases is indeed a formidable, if not impossible, task.[4]

In 1950, Chief Judge Marbury concluded in *Vierling v. Holt, supra,* 197 Md. at 527, 80 A. 2d at 27, after a review of the cases and treatises:

> "*The question just when the chancellor can or shall exercise his discretion to strike out an enrolled decree on petition has given frequent trouble to this court, and no very clear cut rule has been established. . . .* The final result of all the decisions seems to be that no petition to strike out an enrolled decree should be granted where the case has originally been heard on the merits, although where there are extraordinary features which make it imperative in the interest of justice that

---

**3.** That the exceptions to the procedures stated in Gray are no longer meaningful seems implied in Hughes v. Beltway Homes, *supra. See* Committee Note, placed under Rule 625 a. after the decision of this Court in Capobianco v. Gordon, 19 Md. App. 662, 313 A. 2d 517 (1974).

**4.** In Whitlock Cordage Co. v. Hine, *supra,* Chief Judge Boyd collected and considered most of the principal cases in Maryland decided prior to 1915.

the case be reopened, this requirement has sometimes been overlooked." (Emphasis added.)

The latter expression no longer represents an accurate statement of Maryland law. "Extraordinary features" are now inapplicable and unavailing. The only basis upon which an enrolled judgment or decree may be reopened is the presence of "fraud, mistake or irregularity." Maryland Rule 625 a.; *Hughes v. Beltway Homes, Inc., supra.* The rule itself specifically contemplates the employment of the motion procedure in the first sentence of 625 a. and we think the same is implicit with respect to the second sentence pertaining to enrolled judgments. We perceive no cogent reason why a motion (or petition) challenging an enrolled decree on any of the grounds specified in Rule 625 a. is permissible when the case has not been heard on the merits, but proscribed if it has been heard on the merits. This is not to say that a bill of review or an original bill for fraud is not also a viable and available remedy. Indeed, we recognize, as the court pointed out in *Whitlock Cordage Co. v. Hine, supra,* that "[t]here may unquestionably be cases in which it would be necessary to file an original bill, in order to bring the parties back into court"; and that situations may exist when by reason of lapse of time, the death or disappearance of parties, or other circumstances, the original proceeding should not be reopened but an independent attack should be launched by the filing of a new proceeding. 125 Md. at 108, 93 A. at 436. *See, e.g., Schwartz v. Merchants Mortgage Co.,* 272 Md. 305, 322 A. 2d 544 (1974) (appellants proceeded unsuccessfully by an original bill in equity alleging fraud, filed four years after the original decree); *Master v. Master,* 223 Md. 618, 166 A. 2d 251 (1960) (where Judge Hammond, later Chief Judge, affirmed the propriety of an original proceeding to vacate an enrolled decree for fraud against an attempt to "snipe" at the right to do so); *Kaylor v. Wilson,* 260 Md. 707, 273 A. 2d 185 (1971) (where the appellees elected to challenge a tax sale by an action in trespass *quare clausum fregit,* Judge Digges pointed out that, "an attack on an enrolled decree or decretal order based on fraud can only be maintained through a direct attack in the same

proceedings under Maryland Rule 625 *or* through an original bill for fraud." (Emphasis added.) 260 Md. at 711, 273 A. 2d at 187.) In the instant case, we think appellant proceeded properly by motion rather than by an original bill for fraud. This, however, is not dispositive of her appeal.

### III

It has long been black letter law in Maryland that the type of fraud which is required to authorize the reopening of an enrolled judgment is extrinsic fraud and not fraud which is intrinsic to the trial itself. In *Schwartz v. Merchants Mortgage Co.*, *supra*, the origin of our rule was traced by Judge Digges, writing for the court, "back to at least the turn of the century," and it was shown to rest on the early Supreme Court case of *United States v. Throckmorton*, 98 U. S. 61 (1878), and the landmark California case of *Pico v. Cohn*, 91 Cal. 129, 25 P. 970 (1891).

In *Schwartz*, the court pointed out that the case of *Maryland Steel Co. v. Marney*, 91 Md. 360, 46 A. 1077 (1900), "settled beyond question that an enrolled decree will not be vacated even though obtained by the use of forged documents, perjured testimony, or any other frauds which are 'intrinsic' to the trial of the case itself." 272 Md. at 308, 322 A. 2d at 546. The rationale of the rule, as the court lucidly explained, is the principle that the public policy of this State demands an end to litigation once the parties have had an opportunity to present in court a matter for determination, the decision has been rendered, and the litigants afforded every opportunity for review. *United States v. Throckmorton*, *supra*, was quoted to provide examples of what would be considered "extrinsic" fraud. These examples included:

> (1) fraud or deception practiced upon the unsuccessful party by his opponent as by keeping him away from court or making a false promise of a compromise;
>
> (2) where the defendant never had knowledge of the suit but was kept in ignorance by the devices of the plaintiff;

(3) where an attorney "fraudulently or without authority assumes to represent a party and connives at his defeat";

(4) where counsel "corruptly sells out his client's interest to the other side." *Schwartz, supra,* 272 Md. at 309, 322 A. 2d at 547.

Furthermore, the opinion of the Court of Appeals in *Schwartz* emphasizes that the "intrinsic-extrinsic distinction" is firmly embedded in the jurisprudence of Maryland and that the teaching of our cases is that "fraud is extrinsic when it actually prevents an adversarial trial, but is intrinsic when it is employed during the course of the hearing which provides the forum for the truth to appear, albeit that truth was distorted by the complained of fraud." 272 Md. at 309, 322 A. 2d at 547.

In the case *sub judice,* putting the best face upon appellant's claims and testimony, we have an example of, at most, intrinsic fraud. No extrinsic fraud — no fraud in the obtention of the decree — can even be suggested upon the record before us. This record discloses, *inter alia*:

(a) that appellant and her former husband were each represented by independent counsel when the separation agreement was prepared;

(b) that she covenanted that either party could appear by counsel at the divorce proceedings before the Master and acknowledged that her counsel had informed her of her rights and liabilities relating to the separation agreement;

(c) that notwithstanding her limited ability to read the English language, she spoke it with some fluency and was sophisticated enough to reject her husband's initial separation offer of $10,000 in cash and to obtain his agreement to the payment of $15,000, a sum which she received and still retained at the time of the proceedings below;

(d) that through her counsel, she filed an answer to

the husband's bill of complaint, in which she admitted the allegations of the bill; and

(e) that she was informed by her counsel (who also represented her in her prior divorce) of the hearing before the Master but declined to appear and instructed counsel to be present alone because she "just wanted to get it over with."

Under the circumstances, her claim that she did not expect the marriage bonds to be dissolved is hardly credible and, in any event, would represent defensive matter intrinsic to the trial itself. The latter is also true of her contention on appeal that the testimony before the Master of her former husband and his corroborating witness, the best man at their wedding, that the parties were separated and that there was no hope of reconciliation, was perjured.

Citing the chancellor's finding that "the matter before him was governed by the law relating to extrinsic fraud," appellant argues before this Court that "whatever may be the rule relative to general equity cases, the courts look differently upon divorce cases," citing *Fisher v. Fisher*, 95 Md. 314, 52 A. 898 (1902). In actuality, the Maryland Court of Appeals has *not* looked differently upon matrimonial causes. *Pressler v. Pressler, supra; Tabeling v. Tabeling, supra.* In *Tabeling,* a decree granting the husband a divorce on the basis of the wife's adultery was sought to be set aside on the ground that the husband connived in bringing about the adultery and it was contended that the decree was based upon the perjured testimony of the husband and his witnesses. Reversing a decree setting aside the original decree of divorce, the Court of Appeals stated:

"The charge that there was a conspiracy between the appellant's witnesses to 'frame' the appellee, and that the decree was founded on their perjured testimony, likewise goes to the merits of the case, and is not recognized as a sound reason for setting aside a decree after it has been enrolled, . . . ." 157 Md. at 434, 146 A. at 391.

And in *Pressler, supra,* where a husband sought to set aside a decree of divorce granted to the wife, long after the decree had been enrolled, upon the basis of false testimony given by the wife in obtaining the decree, an order overruling a demurrer to the petition was reversed. The Court of Appeals noted the observation of its predecessors in *Fisher v. Fisher, supra,* upon which appellant here relies, that in divorce proceedings which are often not contested and where collusion may exist between the parties, the public has a peculiar interest which "is in the care of the tribunal before which the proceedings are pending, . . . lest by the suppression or perversion of important facts it may be made the medium of obtaining a decree to which neither of the parties is justly or legally entitled." 134 Md. at 249, 106 A. at 689, *quoting, Fisher, supra,* 95 Md. at 319, 52 A. at 900. At the same time, however, the opinion in *Pressler* quickly adds:

> "But we also said [in *Foxwell v. Foxwell,* 122 Md. 263, 89 A. 494 (1914)]: 'Where the process has been regularly served upon the defendant and he fails to appear and make his defense and judgment is regularly entered against him, a strong case must be presented to justify the Court in striking out the judgment after the lapse of the term (or the enrollment of the decree); and the Court will not in any such case interfere with the judgment unless the facts produced clearly establish fraud, deceit, surprise or irregularity *in obtaining the same,* and the defendant has acted *bona fide* and with reasonable diligence in making the application." (Citations omitted.) (Emphasis in original.) 134 Md. at 250, 106 A. at 689.

Finally, it is apparent that the requirements of due diligence referred to in the above quotation is singularly lacking in the case before us. Here, as previously observed, more than three years elapsed between the date of the decree of divorce and the filing of appellant's motion. We do not consider it an extenuating circumstance that during this

period of time the parties cohabited nor that appellant did not initiate these proceedings until appellee terminated her status as "housekeeper" and filed eviction proceedings against her. In *Hughes v. Beltway Homes, Inc., supra,* where appellee moved to set aside an order of ratification following a foreclosure sale under Rule 625 a., almost six months after the sale, the Court of Appeals quoted the observation of the chancellor (Couch, J.) that: "The extraordinarily long time that passed from the date of sale until Beltway raised its complaint precludes a finding of diligence and may even bring the issue of good faith into question." 276 Md. at 389, 347 A. 2d at 842. We think the latter observation is appropriate to the facts here presented, as is the following language of Judge Smith:

> "There is yet another reason, however, why it should fail and that is that in moving to set aside a judgment on the ground of fraud, mistake, or irregularity a party must show by satisfactory proof that he is acting in good faith, with ordinary diligence, and that he has a meritorious defense or cause of action, as the case may be." (Citations omitted.) *Id.*

Appellant did not, at all events, act with the diligence required by Maryland law.

> *Judgment affirmed; costs to be paid by appellant.*